Nu-Ken Novelty, Inc. *v.* Heller, Appellant.

432

Submitted November 11, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

 

*John F. Dent,* Assistant District Attorney, and *John N. Scales,* District Attorney, for appellant.

*Irving M. Green,* for appellee.

OPINION BY JACOBS, J., March 24, 1972:

This appeal is from an order of the lower court directing the return of thirteen pinball machines to their owner, Nu-Ken Novelty, Inc. The machines in question had been confiscated by the Pennsylvania State Police under authority of the Act of March 31, 1860, P. L. 382, §60, 18 P.S. §1445. This act provides for confiscation and forfeiture of "any device or machine . . . used and employed for the purposes of unlawful gaming. . . ." The question presented by this appeal

is whether the confiscated pinball machines are in fact devices "used . . . for . . . unlawful gaming" and therefore subject to forfeiture.

At the trial below no attempt was made to show that the confiscated pinball machines were actually used for gambling. Consequently, the machines cannot be forfeited unless they are so intrinsically connected with gambling as to constitute gaming devices per se. *Friedberg Appeal*, 208 Pa. Superior Ct. 312, 222 A.2d 509 (1966). A machine is a gaming device per se if it can be used for no purpose other than gambling. *Friedberg*, supra; *Commonwealth v. Joyce*, 78 York 157 (1965). The mere fact that a machine involves a substantial element of chance is insufficient to condemn it as a gaming device. *Wigton's Return*, 151 Pa. Superior Ct. 337, 30 A.2d 352 (1943). In establishing whether a machine is a gaming device the burden of proof is upon the Commonwealth. *Wigton's Return*, supra. However, since the proceeding is in rem, the Commonwealth is not held to the same degree of proof required in a criminal trial. *Pannulla v. Rosenberg*, 171 Pa. Superior Ct. 233, 90 A.2d 267 (1952).

The trial court applied the above principles to the pinball machines presently in issue and found them not to be gaming devices per se. We affirm this finding.

The nature of the machines in issue is as follows: Each is a combination of slot machine and pinball machine. The first phase of play is the "slot machine" phase. Play is begun by the insertion of a dime in the machine which causes symbols on a panascope to spin. When the symbols come to rest, a combination of the symbols is formed. Some combinations are "lucky" and others are not. The "lucky" combinations greatly increase a player's ability to obtain a high final score

after the "pinball" phase of play is completed. The pinball phase consists of a standard pinball plunger which propels a ball to the top of an inclined plane. The ball rolls down the inclined plane hitting bumpers and thereby racking up a score. A player's final score is computed by totaling the pinball-produced points and increasing the total by additional points if a lucky combination of symbols resulted from the "slot machine" phase of play. The only reward received for a high score is a credit for additional free games. The number of "free game credits" is dependent upon the cumulative amount of the final score.

The Commonwealth relies upon *Laris Enterprises, Inc. Appeal,* 201 Pa. Superior Ct. 28, 192 A.2d 240 (1963), contending that we therein condemned pinball machines similar to the ones presently in issue. It is true that in *Laris* we condemned pinball machines, but those machines are distinguishable from the present ones in at least three significant ways. First, the scores obtained on the *Laris* machines were governed *entirely* by chance, whereas in the present case the lower court found that skill plays a role in the operation of the machines. Second, unlike the present machines, the *Laris* machines were equipped with a coin-apportioning device which indicated how many free games had been canceled in return for cash. Third, the *Laris* machines were multiple-coin operated machines permitting the player to insert an unlimited number of coins in the machines during the "slot machine" phase of play in the hope of obtaining a "lucky" combination on the panascope before operating the pinball portion of the machine. In contrast, the present machines were found to operate only on a single-coin basis.

In view of these distinctions between the present case and *Laris,* and in the light of the principles set

out above, we conclude that the Commonwealth has failed to sustain its burden of proving the present machines to be gaming devices per se. Therefore, absent a showing that they were *actually used* for gambling, the present machines cannot be subjected to forfeiture.

Order affirmed.

CERCONE, J., concurs in the result.