465 A.2d 973

COMMONWEALTH of Pennsylvania, Appellee,

v.

TWO ELECTRONIC POKER GAME MACHINES and One Electronic Blackjack Game Machine.

Appeal of KING AMUSEMENT COMPANY, INC., Intervenor, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

ONE ELECTRONIC POKER GAME MACHINE and One Electronic Blackjack Game Machine, Intervenor, King Amusement Company, Inc., Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

ONE ELECTRO-SPORT DRAW POKER MACHINE Serial No. 258, Appellee.

Supreme Court of Pennsylvania.

Argued April 25, 1983.

Decided Sept. 21, 1983.

Reargument Denied Oct. 13, 1983.

188

William M. Thomas, Allentown, for King Amusement Co., Inc.

William Platt, Dist. Atty., Richard Tomsho, Robert L. Eberhardt, Kemal Alexander Mericli, Asst. Dist. Attys., for the Com.

Wayne DeLuca, Pittsburgh, for One Electro-Sport Draw Poker Machine Serial No. 258.

Before ROBERTS, C.J., and NIX, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

These cases require us to consider the issue of what constitutes a gambling device *per se,* as well as the distinct but related issue of the power of a court to order the seizure and forfeiture of a machine which while not a gambling device *per se* is shown to have been used for gambling purposes. Specifically, we must determine whether electronic devices which simulate some of the elements of the games of draw poker and blackjack and which give only free games as a reward for successful play are nevertheless gambling devices *per se* when they also possess a "knockdown" button and a meter to record the number of free games knocked down.

In both *Commonwealth v. One Electronic Poker Game Machine and One Electronic Blackjack Game Machine* (*One Poker Game*) (No. 88 E.D. Appeal Dkt.1982) and *Commonwealth v. One Electro-Sport Draw Poker Machine* (*Electro-Sport*) (No. 68 W.D. Appeal Dkt.1982), the lower courts held the machines were not gambling devices *per se* because they could be used for purposes other than gambling and the elements of pure chance and a reward, necessary to the finding of a gambling device *per se,* were not present. Bearing in mind that the Commonwealth has the burden of proving the *per se* nature of the machines, but also that the proceedings are *in rem* in nature, requiring the Commonwealth to prove its case only by a preponderance of the evidence, we hold that on the facts of *Electro-Sport,* the evidence was sufficient to show that the machine in question was a gambling device *per se.* We thus reverse the Superior Court's ruling in *Electro-Sport.* Based on our disposition of *Electro-Sport,* we find that the evidence which points to the *per se* nature of the machine in that case is lacking in *One Poker Game.* We therefore affirm Superior Court's ruling in that case.

In *Commonwealth v. Two Electronic Poker Game Machines and One Electronic Blackjack Game Machine* (*Two Poker Games*) (No. 81 E.D. Appeal Dkt.1982) we must

determine the authority of a court to order the seizure and forfeiture, under 18 Pa.C.S. § 5513(b) and 47 P.S. § 6–602, of devices found to have been used for gambling purposes but not found to be gambling devices *per se.* Common Pleas ordered the forfeiture after appellant King Amusement Company failed to produce any evidence that the machines were being lawfully used or that it had no knowledge of the unlawful use. Appellant claims that it is clothed with a "presumption of innocence" and therefore need not introduce evidence as to the machine's lawful use or its lack of knowledge of unlawful use. Common Pleas rejected this argument, as did Superior Court in affirming the Common Pleas' order of forfeiture. We believe Common Pleas properly exercised its discretion under the statute, and that the Commonwealth's evidence was sufficient to support the forfeiture order, and thus we affirm.

While these cases have been consolidated for appeal, each arises from a distinct set of facts and will be separately considered. Because our determination in *Electro-Sport* is controlling in *One Poker Game,* we consider the former case first.

I

ELECTRO–SPORT

No. 68 W.D. Appeal Docket 1982

A

On March 11, 1980, a criminal complaint was filed against a tavern owner in Neville Township, Allegheny County, charging him with maintaining a device used for gambling purposes in violation of 18 Pa.C.S. § 5513(a)(1)[1] and seeking the seizure and forfeiture of the machine pursuant to 18 Pa.C.S. § 5513(b).[2] The complaint alleged that the machine, an Electro-Sport Draw Poker Machine, was a gambling

1. Section 5513(a)(1) provides in relevant part:
 A person is guilty of a misdemeanor of the first degree if he: (1) intentionally or knowingly ... maintains, ... any device to be used for gambling purposes, except playing cards;

2. Section 5513(b) provides:
 Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited

device *per se.* RR–5a. No allegation was made that the machine had been used for gambling purposes. The tavern owner filed a Motion for Return of Property under Pa.R. Crim.P. 324 to determine whether the seizure of the machine was lawful.

Following a hearing before Allegheny County Common Pleas, that court ruled that the Electro-Sport Draw Poker Machine was not a gambling device *per se,* finding that the machine was essentially an electronic deck of cards and that the elements of a result determined by chance and a reward, necessary for the finding of a gambling device *per se,* were not present. Common Pleas therefore granted the Motion for Return of Property. Superior Court affirmed, agreeing with Common Pleas' findings and going on to hold that the Electro-Sport machine required substantial skill for successful play, that free games did not constitute a sufficient reward, and that the presence of a multiple-coin feature, a "knockdown" button, and a meter to record the number of games knocked down did not render the machine a gambling device *per se.* *Electro-Sport,* 297 Pa.Superior Ct. 54, 443 A.2d 295 (1981).

The physical characteristics of the Electro-Sport machine and its method of play are not in dispute. It is a coin operated video game which simulates some elements of five card draw poker. A microprocessor, through the operation of a random number generation program, simulates the shuffling of a deck of cards and the dealing of one hand of five card draw poker. The player can insert from one to eight coins to begin play. Although only one coin is necessary to play a game, the insertion of multiple coins increases the number of "skill points" awarded to a winning hand— and hence increases the number of free games which can be

to the Commonwealth. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section.

*See* 47 P.S. § 6–601 *et seq.* for provisions governing seizure and forfeiture.

won. The insertion of more than one coin does not have any effect on the odds of winning, nor is it represented to the player that it does so.[3]

"Skill points" are awarded for various combinations of cards, ranging from one point for a pair of aces to fifty points for a straight flush. The "hands" are created by "standing pat" on the five cards initially "dealt" or by drawing cards by indicating which cards the player wants to discard. The odds are precisely the same as those in an ordinary game of poker, and can only be changed by replacing the integrated circuitry. The player does not play against the machine, but rather seeks to maximize his hand and hence the awarded "skill points."

The Commonwealth argues that the Electro-Sport machine is "predominantly and preeminently a game of chance." Brief of Appellant at 17. While conceding that knowledge of probabilities may increase a player's chance of winning, the Commonwealth contends that the outcome is ultimately determined by chance, unlike a "*bona fide* amusement device" on which the outcome is determined solely by skill. Brief of Appellant at 18. Finally the Commonwealth contends that the presence of the "knock down" switch and a meter to record the free games cancelled, which have no legitimate purpose and are so closely associated with payoffs, provide ample circumstantial evidence to prove by a preponderance of the evidence that such a machine is a gambling device *per se.* For the reasons which follow, we agree that the facts of this case, when read against the applicable precedents, support the Commonwealth's position.

## B

■ Historically, we have held a machine is a gambling device *per se* if it can be used for no purpose other than

---

**3.** The insertion of whatever number of coins the player chooses is analogous to the ante in ordinary poker. However, unlike regular poker, no betting can take place thereafter. Thus, openers, raises, calls, etc. are eliminated. Obviously, this greatly reduces the skill element below that of ordinary draw poker. For this reason it is clear the machine simulates only *some* elements, and perhaps the least important, of draw poker.

gambling. *Nu-Ken Novelty, Inc. v. Heller,* 220 Pa.Superior Ct. 431, 288 A.2d 919 (1972). This broad standard must be interpreted to provide a meaningful test for judging a given machine. If it is to be useful, it cannot mean that the machine could not possibly be used for any activity other than gambling, because almost any machine, including the Electro-Sport, *can* be used for non-gambling (*e.g.,* pure amusement) purposes. Instead, the inquiry must be whether the machine is "so intrinsically connected with gambling" as to constitute a gambling device *per se. Nu-Ken, supra,* 220 Pa.Superior at 433, 288 A.2d at 920 (1972). *See also Friedberg Appeal,* 208 Pa.Superior Ct. 312, 222 A.2d 509 (1966); *American Legion Post 51 Appeal,* 188 Pa.Superior Ct. 480, 149 A.2d 483, *aff'd per curiam,* 397 Pa. 430, 156 A.2d 107 (1959), *appeal dismissed,* 363 U.S. 720, 80 S.Ct. 1596, 4 L.Ed.2d 1521 (1960). Such a determination will turn on the characteristics of the machine when read against the three elements necessary to gambling: consideration, a result determined by chance rather than skill, and a reward. If the machine displays all three qualities, it will then be "so intrinsically connected with gambling" as to be a gambling device *per se.*

There is no dispute that a player must insert a coin to activate the Electro-Sport machine. Thus the element of consideration is present.

■ Whether the result is determined by chance poses a far more difficult question. Superior Court, citing *Nu-Ken, supra,* and *In re Wigton,* 151 Pa.Superior Ct. 337, 30 A.2d 352 (1943), stated the standard to be that:

> In order to conclude that a machine is a gambling device *per se,* it is necessary to find that successful play is *entirely a matter of chance as opposed to skill.*

*Electro-Sport, supra,* 297 Pa. at 58, 443 A.2d at 297 (emphasis added). Initially, we note that the cited cases do not stand for the proposition that success be *entirely* a matter of chance. Rather, they hold that the "mere fact that a machine involves a substantial element of chance is insufficient" to find the machine a gambling device *per se. Nu-*

*Ken, supra,* 220 Pa.Super. at 433, 288 A.2d at 920, citing *In re Wigton, supra.* Thus a showing of a large element of chance, without more, is not sufficient. Nor must the outcome of a game be wholly determined by skill in order for the machine to fall outside the *per se* category. As Superior Court pointed out:

> A peculiar combination of luck and skill is the *sine qua non* of almost all games common to modern life. It is hard to imagine a competition or a contest which does not depend in part on serendipity. It cannot be disputed that football, baseball and golf require substantial skill, training and finesse, yet the result of each game turns in part upon luck or chance.

*Electro-Sport, supra,* 297 Pa. at 60, 443 A.2d at 298. We are thus left with the task of determining in each case the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome.

The expert witness who testified on behalf of the tavern owner is a professor of statistics at Carnegie-Mellon University. He stated that he could win at a rate four and one half (4½) times greater using a "smart" strategy (*i.e.,* employing his knowledge of statistics) than by using a "dumb" strategy (*i.e.,* always "standing pat" on the initial hand dealt by the machine). Based on his play of the Electro-Sport machine, he concluded that skill was a "definite factor" in playing the game. RR–130a. On cross-examination, however, he conceded that chance was also a factor both in determining the initial hand dealt and the cards from which one can draw, concluding that there was a "random element" present. *Id.* He could not say how to apportion the amounts of skill and chance. The expert witness for the Commonwealth testified that no skill was involved in playing the game.

While appellee has demonstrated that some skill is involved in the playing of Electro-Sport, we believe that the element of chance predominates and the outcome is largely determined by chance. While skill, in the form of knowledge of probabilities, can improve a player's chances of

winning and can maximize the size of the winnings, chance ultimately determines the outcome because chance determines the cards dealt and the cards from which one can draw—in short, a large random element is always present. *See Commonwealth v. 9 Mills Mechanical Slot Machines,* 62 Pa. Commonwealth Ct. 397, 437 A.2d 67 (1981). That the skill involved in Electro-Sport is not the same skill which can indeed determine the outcome in a game of poker between human players can be appreciated when it is realized that holding, folding, bluffing and raising have no role to play in Electro-Sport poker. Skill can improve the outcome in Electro-Sport; it cannot determine it.

## C

 The last element—reward—is also present in the Electro-Sport machine, despite the fact that the game ostensibly gives only free games to the winner. Although a free game in and of itself does not constitute a reward, *In re Wigton, supra,* the awarding of free games by a machine which possesses other characteristics can be taken to constitute a sufficient reward. We agree with the analysis of Commonwealth Court in *9 Mills Machines, supra:*

> The ability to knock-off free games, the presence of meters to enable the owner to determine how many games were knocked-off, the ability of a player to hold a part of his previous play over to the next game in order to increase his or her chances of winning a higher pay-off on the next game, and the extremely short playing time involved compels the conclusion that the reward of a free game constitutes a thing of value.

62 Pa. Commonwealth Ct. at 404, 437 A.2d at 71 (citations omitted). All of these features are present on the Electro-Sport machine, as well as a "dip switch" which allows the owner to vary the number of game credits per coin. None of these features is necessary to the functioning of the device as a legitimate profit-making amusement game. Rather, they provide circumstantial evidence which we believe establishes by a preponderance of the evidence a suffi-

cient reward to meet the third element of the test for a gambling device *per se.* Such a conclusion is consistent with previous decisions of our appellate courts. *9 Mills Machines, supra; Laris Enterprises, Inc. Appeal,* 30 Pa.D & C.2d 179, *aff'd,* 201 Pa.Superior Ct. 28, 192 A.2d 240 (1963); *In Re Gaming Devices Seized at American Legion Post No. 109,* 25 Pa.D & C.2d 572, *aff'd,* 197 Pa.Superior Ct. 10, 176 A.2d 115 (1961); *American Legion Post 51 Appeal, supra; Urban's Appeal,* 148 Pa.Superior Ct. 101, 24 A.2d 756 (1942). *Compare Nu-Ken, supra* (absence of "knock-down" button used to distinguish *Nu-Ken* from *Laris, supra* ).

■ In summary, we believe the Commonwealth sustained its burden of proof by showing by a preponderance of the evidence that the Electro-Sport Draw Poker Machine manifests all three features necessary for it to be classified a gambling device *per se.* Consideration is clearly present, chance determines the ultimate outcome despite the presence of certain skill elements, and the totality of the circumstances indicates that a reward element is present.

We therefore reverse the order of Superior Court and remand this case to Allegheny County Common Pleas for proceedings consistent with this opinion.

## II

## ONE POKER GAME

### No. 88 E.D. Appeal Docket 1982

On January 31, 1980, police officers of the City of Allentown seized an electronic poker machine and an electronic blackjack machine on the premises of the Liberty Fire Company Social Club in Allentown. The Commonwealth moved to have the machines forfeited under 18 Pa.C.S. § 5513(b). As in *Electro-Sport,* there was no direct evidence that the machines had been used for gambling purposes. Lehigh County Common Pleas found that the machines were not gambling devices *per se.* Superior Court affirmed on the basis of *Electro-Sport. One Poker Game,* 302 Pa.Superior Ct. 350, 448 A.2d 1077 (1982).

■ The machines in the present case lack two features which in our analysis of *Electro-Sport* were crucial to finding the presence of a reward. The "knock-down" button and meter to record the number of games knocked down, present on the Electro-Sport machine, are not present here. Because these devices are not present, there is no element of reward, an element essential to finding that these machines are gambling devices *per se*. *See 9 Mills Machines, supra; American Legion Post 51 Appeal, supra. Compare Nu-Ken, supra.* Thus, based on our holding in *Electro-Sport*, we affirm the order of Superior Court.

## III

### TWO POKER GAMES

#### No. 81 E.D. Appeal Docket 1982

On January 31, 1980, Allentown police seized two electronic poker machines and one electronic blackjack machine at the Franklin Social Club in Allentown. The Commonwealth instituted forfeiture proceedings under 18 Pa.C.S. § 5513(b). A hearing was held on the Forfeiture Petition before Lehigh County Common Pleas. Common Pleas held that although the machines were not gambling devices *per se,* they had been used for illegal gambling. This finding was based on slips found at the club. Six of the slips were daily tallies of payments on various machines. RR–16a. A seventh slip listed the amount of money to be paid for a given number of "skill points." *Id.* Common Pleas found this conclusive evidence of illegal gambling. Superior Court affirmed. *Two Poker Games,* 302 Pa.Superior Ct. 350, 448 A.2d 1077 (1982).

Appellant concedes it did not meet the burden of establishing that these machines were not used for unlawful purposes, imposed by the applicable statutory forfeiture provisions, but argues that it is clothed with a "presumption of innocence" and thus need not present evidence to establish that it was unaware that the machines were being used for unlawful purposes.

■ We, like Superior Court, find this argument unpersuasive. It ignores the plain language of the forfeiture provisions of the Liquor Code requiring the claimant to show that the property was "not unlawfully used or possessed."[4] These provisions are expressly applicable here. That property may be forfeited even where the owner has no knowledge of its unlawful use is well established. *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).[5]

■ The fact that the owner had no knowledge of its unlawful use comes into play under our cases only in connection with the exercise of discretion by Common Pleas in ordering forfeiture.

Under the 1937 amendment to Section 611 of the Pennsylvania Liquor Control Act, and prior to the amendment of Sections 601–603 of the 1951 Liquor Code by the Act of April 20, 1956, the statutory forfeiture provisions were held to be mandatory, and a vehicle employed in the illegal transportation of liquor was subject to seizure regardless of who the owner was, and whether or not he had knowledge of the illegal use: *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa.Superior Ct. 392, 45 A.2d 406; *Commonwealth v. One 1940 Chevrolet Station Wagon,* 159 Pa.Superior Ct. 615, 49 A.2d 531; *Commonwealth v. One Studebaker Sedan,* 140 Pa.Superior Ct. 197, 14 A.2d 198.

**4.** The Crimes Code, 18 Pa.C.S. § 5513(b) provides that forfeiture proceedings in gambling cases shall be the same as in those involving liquor. *See* note 2, *supra.* The Liquor Code, Act of April 12, 1951, P.L. 90 as amended, 47 P.S. § 6–602(e) deals with forfeiture proceedings and provides:

(e) At the time of said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed.

**5.** This situation is totally unlike *U.S. v. U.S. Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) where the only evidence of illegal use on which forfeiture was based was the absence of a gambling registration stamp, which the owner was privileged not to purchase under the Fifth Amendment. Here, there was independent non-privileged proof of illegal use.

However, since the amendment of April 20, 1956, we have plainly held that the courts of quarter sessions are vested with discretion as to forfeiture where the claimant had no knowledge of the illegal use of the vehicle: *Commonwealth v. One 1957 Chevrolet Sedan,* 191 Pa.Superior Ct. 179, 155 A.2d 438.

*Commonwealth v. One 1958 Oldsmobile Sedan,* 194 Pa.Superior Ct. 352, 357, 168 A.2d 776, 778 (1961). As this passage from Judge Wright's well reasoned opinion makes clear, the legislative history of the Liquor Code shows a change from mandatory to discretionary forfeiture. Thus, while the burden of showing that the property "was not unlawfully used or possessed," imposed on the claimant by 47 P.S. § 6–602(e), remains the same under the current text of the Liquor Code, claimant's failure to so demonstrate does not inevitably result in forfeiture. Under 47 P.S. § 6–603, the trial court has discretion in ordering or not ordering forfeiture. *See also* to the same effect 47 P.S. § 6–602(e). In exercising that discretion the trial court takes into account a claimant's lack of knowledge of illegal use. *See also Commonwealth v. One 1962 Chrysler Hardtop Sedan,* 201 Pa.Superior Ct. 478, 193 A.2d 636 (1963); *Commonwealth v. One 1973 Chevrolet Pickup/Camper Truck,* 20 Pa. Commonwealth Ct. 300, 342 A.2d 153 (1975); *Commonwealth v. One 1972 Ford Pickup Truck,* 49 Pa. Commonwealth Ct. 600, 411 A.2d 892 (1980). Of course, since it has discretion, if the owner produces evidence that he has no knowledge of illegal use, the trial court must be persuaded by that evidence; otherwise it may, in its discretion, impose forfeiture. Moreover, in exercising its discretion the trial court should not allow the owner to close his eyes to facts which should put him on notice of illegal use.

▪ In any event, the statutory language and case law require one who seeks to block forfeiture of his illegally used property to show that he had no knowledge of such use. In this case appellant has failed to even produce evidence that it had no knowledge. We therefore affirm the order of Superior Court in this case.

In No. 68 W.D. Appeal Docket 1982, the order of the Superior Court is reversed and the record is remanded to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion. In No. 88 E.D. Appeal Docket 1982, the order of Superior Court is affirmed. In No. 81 E.D. Appeal Docket 1982, the order of Superior Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this case.