## Hubbard v. Bensalem Police Department

*Barry H. Denker,* for plaintiffs.

*Alan M. Rubenstein,* chief deputy district attorney, for the Commonwealth.

BIEHN, *J.,* September 26, 1984—On May 24, 1984 and May 30, 1984, five video electronic display machines were seized as gambling devices pursuant to 18 Pa.C.S. §5513. A petition for return of property was filed and an evidentiary hearing was held on June 18, 1984. We find that the machines are gambling devices per se and therefore are forfeited to the Commonwealth of Pennsylvania.

At the hearing, the following evidence was established. The machines numbered 592, 593 and 594 were taken from Casmirri's Lounge; those numbered 607 and 608 were seized from an establishment named the Easy Pieces Bar. All of the machines are operational video poker machines into which quarters are inserted. All of the machines with the exception of number 594 have the following notice sticker on them:

"This machine has no "knock-down" button and no meter to record the number of games knocked down. Pursuant to Commonwealth v. One Electronic Poker Game Machine, Supreme Court of Pennsylvania no. 88 E.D. Appeal Docket 1982, it is not a gambling device per se.

The proprietor will gladly demonstrate the truth of the above."

However, despite this notice, John Wagner, a detective from the Bucks County District Attorney's office, testified and demonstrated that all of the machines have a wire inside the cabinet which, when placed on a terminal, gives each machine the ability

to knock-off or knock-down free games. All that is needed is a key to open the machines.

Petitioner Anthony Casmirri, owner of machines 592, 593 and 594, testified that he had the machines changed — that is, he had the wires disconnected that controlled the knock-down function, in order to comply with the law. He further testified that he did not know how to reconnect the wires and that such was never done.

Petitioner Barbara Hubbard, manager of the Easy Pieces Bar, also testified that the machines at that establishment had been changed and that neither she nor any of the employees under her direction ever reconnected the wires.

Notwithstanding the above testimony, the issue before us is not the "intent" of petitioners but rather whether the changes made in the machines remove them from the category of gambling devices per se.

Petitioners concede that gambling devices may certainly be seized and forfeited to the Commonwealth under 18 Pa.C.S. §5513(b). Nevertheless, petitioners argue that the five machines here were improperly seized because in their present condition they cannot be used as unlawful gambling devices. Petitioners contend that their machines are not gambling devices per se because they lack both an operative knock-down mechanism and a meter to record the number of games knocked-down.

The Supreme Court of Pennsylvania has addressed the question of what constitutes a gambling device per se.

"Historically, we have held a machine is a gambling device *per se* if it can be used for no purpose other than gambling . . . This broad standard must be interpreted to provide a meaningful test for judging a given machine. If it is to be useful, it cannot mean that the machine could not possibly be used

for any activity other than gambling, because almost any machine, including the Electro-Sport, *can* be used for non-gambling (e.g., pure amusement) purposes. Instead, the inquiry must be whether the machine is "so intrinsically connected with gambling" as to constitute a gambling device *per se*." (Citations omitted.) Com. v. Two Electronic Poker Game Machines, 502 Pa. 186, 193-194, 465 A.2d 973, 977 (1983). (Emphasis added.)

It is clear from the above that the test for determining whether a machine is a gambling device per se is not whether it can be used for non-gambling purposes. Rather, it is whether the machine is intrinsically connected with gambling. The Supreme Court then went on to list the three elements necessary to gambling: consideration, a result determined by chance rather than skill, and a reward. "If the machine displays all three qualities, it will then be 'so intrinsically connected with gambling' as to be a gambling device *per se*." Id. (Emphasis added.)

"Although a free game in and of itself does not constitute a reward . . . the awarding of free games by a machine which possesses other characteristics can be taken to constitute a sufficient reward. We agree with the analysis of Commonwealth Court . . .

"The ability to knock-off free games, the presence of meters to enable the owner to determine how many games were knocked-off, the ability of a player to hold a part of his previous play over to the next game in order to increase his or her chances of winning a higher pay-off on the next game, and the extremely short playing time involved compels the conclusion that the reward of a free game constitutes a thing of value." (Citations omitted.) Com. v. Two Electronic Poker Game Machines, supra, at 196.

The Supreme Court further explained that none of the above features is necessary to the functioning of the device as a legitimate profit-making amusement game. Rather, they provide circumstantial evidence of a sufficient reward to meet the third element of the test for a gambling device per se. Id. at 196-197.

Applying this analysis to the facts before us clearly shows that the machines in question here are gambling devices per se. The testimony of Detective John Wagner demonstrated that inside the cabinet of each machine are wires which when connected give the machine the ability to knock-down games. This function plus the extremely short playing time compels us to conclude, as did the court in Two Electronic Poker Game Machines, that the reward of a free game constitutes a thing of value.

Petitioners have attempted to distinguish their machines by arguing that they have no external knock-down button or meters. We find, however, that the replacement of an external knock-down button with an internal knock-down mechanism is nothing more than an attempt to avoid the application of the law and does not remove these machines from the category of gambling devices per se. Neither making the knock-down mechanism obscure nor temporarily disconnecting the wires changes the fact that these machines have the same knock-down capabilities as those before the Supreme Court in Two Electronic Poker Game Machines.

Accordingly, we enter the following

## ORDER

And now, this September 26, 1984, it is hereby ordered and directed that the above seized property is hereby forfeited to the Commonwealth of Pennsylvania.