## Commonwealth v. Four Video Poker Machines

*Donald K. Gardner, assistant district attorney,* for the commonwealth.

*Joseph R. Ferdinand* and *George R. Hludzik,* for Young Men's Polish Association.

TOOLE, *J.,* May 11, 1990 — We have before us for consideration and resolution a motion of the Young Mens' Polish Association seeking return of four seized video poker machines and a petition filed by the Commonwealth of Pennsylvania, Pennsylvania State Police, Bureau of Liquor Control Enforcement, seeking forfeiture or condemnation of the same four machines.[1] A hearing was held, briefs received, argument heard, and the matter is now ripe for resolution.

On or about August 9, 1989, the police, acting on an alleged gambling complaint by an anonymous male informant,[2] entered the YMPA premises at Rear 700 Seybert Avenue, Hazleton, Luzerne County, Pa. The officers identified themselves to the bartender and a club officer and informed them of the reason and purpose of their inspection. The officers noticed four video poker machines. One officer (Ondek) placed a $1 bill in each of the machines and ascertained that they were operational. He then conducted a brief inspection of the machine and found what he described as a "power-

---

1.   The court made both rules which issued returnable on the same date. We also note that the district attorney of Luzerne County responded to YMPA's motion stating that he had no objection to the requested relief since he had no prior knowledge about the search or seizures and was never consulted in any way by the police in this matter.

2.   An officer testified that he had no basis for believing the tipster was reliable and the only personal information apparently furnished was that there were four machines on the premises.

interrupt switch" or "knock-off device."[3] At that point the officers seized and removed the four machines to their evidence office. Later that same evening and without the benefit of a search warrant or other judicial authority, the officers forcibly opened each of the machines with a crowbar to remove the funds and to conduct a further examination. No notice of this action was given to the association nor was it afforded the opportunity to voluntarily secure the opening of the machines or to be present when the machines were forcibly opened and the proceeds were removed and counted. In any event, an examination of the machines revealed that there was no operable counter device but an officer testified that by using an additional electronic device (a one-amp diode) one is able to activate a memory board which is a permanent part of the manufactured machine which is capable of retaining the memory of the games played. While the officer was able to activate the so-called memory or mother board on the machine, there is absolutely no evidence that either the YMPA or the owner of the machine had a similar device or ever employed one.

The association contends that these machines are not gambling devices per se and that there is no evidence that they constitute derivative contraband. Indeed there is no question or contention that any illegal activity was observed or reported concerning these machines (i.e. payoffs). The association contends that since the machines were not per se

---

3. This is in effect a switch employed by the owner or possessor to turn off the machine, such as when closing. The power-interrupt switch is an alternative to pulling the plug of the machine from an electrical socket. In any event when the power-interrupt switch is employed or the unit is unplugged, any games or credits then appearing on the machine are removed or knocked off.

gambling devices, they were illegally seized by the officers. In support of their position the association had one of the owners of the machine testify that the machines were altered when received to remove any counter devices and specific knock-off switches. He testified that the power-interrupt switch was there because it is required by law. In additional support of their position the association points out that the officers did not search for, find or seize any payoff sheets or records; they did not observe any payoffs being made; they did not observe nor did they look for or seize any other device which could knock off or record credits; they never asked anyone to open the machines before removing them and that in fact the machines were removed simply because of the presence of the power-interrupt switch.[4]

In its petition seeking forfeiture the commonwealth alleged:

"(5) The above-listed video poker machines were possessed or used in violation of section 471 of the Liquor Code, 47 P.S. §4-471, and section 5513 of the Crimes Code, 18 Pa.C.S. §5513.

"(6) The above-listed video poker machines are subject to forfeiture under sections 211(a)(3), 211(b), 601, 602, 603 of the Liquor Code, 47 P.S. §§2-211(a)(3), 2-211(b), 6-601, 6-602, 6-603."

We find no authority for any search, seizure or forfeiture in the sections of the Liquor Code cited and relied upon by the bureau. A review of the sections clearly discloses that they deal with bootlegging operations and equipment and in no way refer to or apply to the possession or operation of video poker machines. While section 2-211(b) does

---

4. The officer testified that the only reason he felt the machine was a per se gambling device was because of the presence of the power-interrupt switch.

provide that "any equipment . . . actually used in the commission of the unlawful acts may be confiscated," that section obviously refers to the unlawful acts set out in subsection (a) which, as we have already noted, deals with what might be aptly described as bootlegging operations.

The commonwealth also cites section 5513(b) of the Crime Code as authority for its seizure and requested forfeiture. That section pertinently provides that a person is guilty of a misdemeanor of the first degree if he intentionally or knowingly sets up or maintains a slot machine or any device to be used for gambling purposes. It also provides that, any gambling device possessed or used in violation of the section "shall be seized and forfeited to the commonwealth."

In construing the cited criminal provision, our appellate court has noted that the "law is very restrictive as to what type of machine may be forfeited to the commonwealth under section 5513(b) of the Crime Code." *Commonwealth v. One Electronic Poker Game Machine,* 302 Pa. Super. 350, 448 A.2d 1077 (1982). That court pertinently declared that unless the machines are actually used for gambling then:

"[T]he machines cannot be forfeited unless they are so intrinsically connected with gambling as to constitute gaming devices per se. *Friedberg Appeal,* 208 Pa. Super. 312, 222 A.2d 509 (1966). A machine is a gaming device per se if it can be used for no purpose other than gambling. The mere fact that a machine involves a substantial element of chance is insufficient to condemn it as a gaming device." (citations omitted)

That court citing other appellate decisions went on to declare that the electronic poker machines — similar to the ones involved in this case — were not

per se gaming devices. That càse noted there was some skill required in the playing of these machines. We understand that knowledge and skill may not be required in order to play these machines, but such knowledge and skill certainly changes the nature of the use and we are not convinced, as the officer testified, that playing is all a màtter of chance. We also recognize that a machine is a gaming device per se only if it can be used for no purpose other than gambling. *Nu-Ken Novelty Inc. v. Heller,* 220 Pa. Super. 431, 288 A.2d 919 (1972). We believe these machines can and are used for many purposes other than gambling. In addition to amusement, this court has, on a number of occasions, distributed such machines to adult day care centers, nursing homes, and hospitals to be employed as therapeutic and amusement devices. Of course if the machines are actually employed for gambling purposes, then they are subject to confiscation and forfeiture under section 5513(b) of the Crime Code.

Our appellate courts have also noted and declared that video poker machines are not gambling devices per se unless they contain a knock-down device and meter or counter of some kind to record the number of games. See *Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 465 A.2d 973 (1983). The machines in this case were removed without a search warrant and before an actual determination was made by anyone as to the existence or non-existence of a counter device. As noted, the officer testified that he considered them gambling devices per se simply because of the presence of the power-interrupt switch. In order to determine whether the essential element — a counter — was present, the officers forcibly opened the machines at a later time and location. We have not been cited

nor have we found any Pennsylvania law authorizing the bureau to remove these machines without a warrant since there was no personal observation of illegal gambling use and insufficient evidence to establish that the machines contained a counter device before their removal. To hold otherwise is to say that the end justifies the means. The facts known to the officers may or may not have been enough to request and secure a search warrant but on the facts known to the officers at the time of the seizure there was no factual or legal basis on which to conclude that any of these machines met the contraband test as promulgated by our appellate courts.[5]

Even assuming the right to seize the machines we are not satisfied that the evidence presented establishes with the clarity required that these machines were illegal gambling devices under Pennsylvania state law. The seized machines contained no operable meter or counter to record the number of games allegedly being knocked off. Even if we accept the officers' testimony that the machines had computer capabilities that could be utilized through the use of an electronic device does not make the machine a gambling device. The ability to convert a machine by the addition or parts does not make it a gambling device per se. It is the

---

[5] We are also troubled by the fact that these machines were forcibly opened without prior notice to the owner and club or opportunity to be present when the same were forcibly opened. Even assuming the authority to seize we believe that the machines should not have been forcibly opened without authorization of court and notice and opportunity to the alleged owners or possessors to contest the proposed action or to be present when the machines were opened to determine the amount of proceeds in the machine. If there is no authority to forcibly open the machine, who has the responsibility of paying for the damage if the machines must be returned?

condition of the machine at the time that it is confiscated which controls in determining whether it is a gambling device if there is no evidence of gambling activity. *Commonwealth v. Twelve Dodge City Video Poker Machines,* 517 Pa. 363, 537 A.2d 812 (1988). That these machines could be altered is not relevant. There is in the instant case absolutely no evidence that anyone possessed or controlled any device which was being or could be employed to activate any computer counter capabilities of these machines.

In summary then the bureau has offered absolutely no factual or legal authority supporting their warrantless seizure and subsequent search of these machines. In the absence of such authority, we decline to conclude that these machines constitute illegal contraband and we therefore deny the requested forfeiture and will direct that the machines be returned to the association.

In view of our resolution of the issues, we also direct that the bureau account for any and all moneys which were removed from these machines and promptly return said funds which, according to the evidence, is $189.45, to the association.

Accordingly, we enter the following

### ORDER

It is ordered, adjudged and decreed:

(1) The Commonwealth of Pennsylvania, Pennsylvania State Police, Bureau of Liquor Control Enforcement's petition for forfeiture is denied.

(2) The petition of the Young Mens' Polish Association for return of the seized machines is granted and the commonwealth is further ordered and directed to return the machines and any and all funds seized therefrom.