**COMMONWEALTH of Pennsylvania**

v.

**WINTEL, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.
Decided July 29, 2003.

---

Joel M. Flink and David M. Ginsberg, Philadelphia, for appellant.

Jonathan M. Levy, Philadelphia, for appellee.

Before PELLEGRINI, J., LEAVITT (P.), J., and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Wintel, Inc. (Appellant) appeals from the order of the Court of Common Pleas of the First Judicial District (trial court)[1] that denied Appellant's petition for return of property confiscated by the Philadelphia Police Department (Police Department). The property in question consisted of video slot machines determined by the trial

---

1. The First Judicial District is the County of Philadelphia.

court to be gambling devices *per se* and, as such, subject to forfeiture. We affirm.

The facts relevant to this appeal are as follows. Complaints were made with the Police Department that gambling was taking place at the Lucky 777 Game Room (Lucky 777), located on the second floor of the Passyunk Bingo Hall (Bingo Hall) in Philadelphia.[2] Lucky 777 used the Freespin Promotional Sweepstakes System, which consisted, *inter alia*, of video slot machines (machines), and Appellant owned the 30 machines leased to Lucky 777.[3]

On January 19, 2001, in response to the complaints, Officers Mireille Green and Kimberly Butler went undercover to investigate. At the Bingo Hall, they were approached by an employee who asked if they wanted to play bingo or try the machines. The officers expressed an interest in the machines and proceeded to the second floor, where they were invited to play the machines; they accepted. To play the machines, the officers were required to fill out a white slip, which entitled them to 20 credits, or two free games.[4] Each game requires eight credits to play. The officers then received instruction on the operation of the machines.

The video slot machines are similar to mechanical slot machines. After the free games are played, the player has to put money in the machine to continue playing. On the screen, symbols[5] are displayed, and the symbols stop, spin, and stop. If the symbols match, the player wins. Upon winning, the player can double her points by playing a card game. Each game lasts approximately 10 seconds.

To cash out winnings, if any, the player has to push the two ticket buttons, one on each side of the machine,[6] to obtain a receipt, which is taken to the office for payment. Prior to collecting the payment, the player has to sign a document that she received this award at no cost.

The officers visited Lucky 777 on three subsequent occasions and noted no material changes in its operation. Finally, on March 2, 2001, the officers returned to Lucky 777 with search and seizure warrants. At the point of collecting their winnings, the officers notified their backup, who entered the premises and executed the warrants. The officers seized approximately 30 machines, cash, computer equipment, payroll, tax records and checkbooks from both floors of Bingo Hall. The officers also arrested the Lucky 777 employees.

On April 6, 2001, Appellant filed a petition for return of property. After hearing evidence on the matter,[7] the trial court

2. The first floor of the property was licensed to conduct bingo games to raise money for charities.

3. Appellant leased the machines to Lucky 777 and Philadelphia Bible Chapel, a charity. Notes of Testimony 10/22/01 at 10 (N.T. ——). Appellant is a registered fundraising organization licensed with the Department of State, Bureau of Charitable Organizations.

4. Players are only permitted one white slip per day.

5. Officer Scott, an expert witness for the Police Department, testified that the symbols are fruits and bells. N.T. 1/17/02 at 51.

6. The ticket buttons on the machines were "knock off features" which erase the credits on the machines and reset the machine to zero so another player can play. N.T. 1/17/02 at 14, 21, 62–63. The machines also contained "dip switches" and "meters." Dip switches are direct interfacing programs used to change the retention odds within a game. N.T. 1/17/02 at 13, 38, 63. A meter on a machine is used to account for money. N.T. 1/17/02 at 38, 62.

7. The trial court heard evidence in two phases, phase 1 and phase 2. During phase 1 of the hearing, the trial court heard evidence from South Philadelphia Post # 98 Jewish War Veterans, South Philadelphia Post # 98

denied Appellant's motion. The trial court concluded that the machines were gambling devices *per se* because they were games of chance that required no skill to play; money had to be placed into the machine to continue playing after the first 20 credits were used; and the prize was a monetary award. The machines also contained other features of gambling devices, *i.e.*, knock down devices, meters and dip switches. As gambling devices *per se*, they were contraband and properly seized. With respect to the other property, *i.e.*, the safe, cash drawers, computers, payroll and tax records, the trial court found these items to be derivative contraband subject to forfeiture. Appellant then brought this appeal.

■ On appeal,[8] Appellant contends that the trial court erred. Specifically, it contends that: (1) the property seized was being used for charitable purposes and, thus, not illegal; (2) the machines could be used for a purpose other than gambling;

(3) the machines were not proven to be gambling devices *per se;* and (4) the Commonwealth did not meet its burden of proof by a preponderance of the evidence.[9]

■ ■ In a motion for the return of property, Pennsylvania Rule of Criminal Procedure No. 588 requires the moving party to demonstrate lawful possession of the property.[10] Then the burden shifts to the Commonwealth to defeat the motion by showing that the property is contraband or derivative contraband. *Commonwealth v. Pomerantz*, 393 Pa.Super. 186, 573 A.2d 1149 (1990).

■ Appellant contends that the machines were used to solicit charitable contributions because Appellant donated 3.9% of the total contributions made through the machines to Bible Charity, a charity devoted to raising funds for the purchase and distribution of bibles and church operations funding.[11] Appellant contends that this means of collecting charitable dona-

Ladies Auxiliary and Philadelphia Bible Chapel in their efforts to obtain property seized from the bingo operation on the first floor. The trial court granted their petition for return of property. In Phase 2, the trial court heard evidence on Appellant's petition for return of the machines and property seized from the second floor.

**8.** This Court's review of trial court's decision on a petition for the return of property is limited to examining whether the findings of fact made by the trial court are supported by competent evidence and whether the trial court abused its discretion or committed error of law. *Commonwealth v. Pena*, 751 A.2d 709 (Pa.Cmwlth.2000).

**9.** In its Statement of Matters Complained about on Appeal and its Brief, Appellant does not request a return of the remaining property, *i.e.*, the cash, computer equipment, payroll, tax records or checkbooks. Appellant's request focuses solely on the machines. Thus, we will not address the remaining property.

**10.** It states:

(a). A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa. R.Crim. P. 588. This rule was formerly Pa. R.Crim. P. 324 that was renumbered as Rule 588 on March 1, 2000. *See* Pa. R.Crim. P. 588, n. (2001).

**11.** Lucky 777 had signs posted explaining the program and the charities involved. The screens on the machines provided information on how the player is contributing to the charity by playing. N.T. 1/10/02 at 92. Appellant received a certificate of registration from the Department of State to act as a professional fundraiser in the Commonwealth and a certificate of contract registration acknowledging its agreement to donate money to Bible Chapel earned from the machines. R.R. 4a–7a.

tions is permissible under the Solicitation of Funds for Charitable Purposes Act (Act), Act of December 19, 1990, P.L. 1200, *as amended,* 10 P.S. §§ 162.1–162.23. The Act protects the public from fraud by requiring those who solicit charitable contributions to disclose their identities.[12] This case, however, does not implicate the Act. The Commonwealth *did not pursue* Appellant for charities fraud; rather, the Commonwealth seized Appellant's property because of a violation of the Crimes Code. Thus, Appellant's reliance on the Act is misplaced.

■ Next, Appellant contends that the machines did not violate the Crimes Code because they were used to raise money for charity rather than for gambling. As such, the machines cannot be gambling devices *per se.*

Section 5513 of the Crimes Code establishes the offense of gambling. It states in relevant part as follows:

(a) **Offense defined.**—A person is guilty of a misdemeanor of the first degree if he:

(1) *intentionally or knowingly* makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, *slot machine or any device to be used for gambling purposes,* except playing cards;

(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

(b) **Confiscation of gambling devices.**—*Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth.* All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section.

18 Pa.C.S. § 5513(a-b) (emphasis added). In short, it is unlawful to assemble, loan or maintain a device to be used for gambling, and such devices are subject to forfeiture.

■ This provision of the Crimes Code has been construed to mean that a machine is a gambling device *per se,* if it can be used for no purpose other than gambling. *Commonwealth v. One Electronic Poker Game Machine,* 302 Pa.Super. 350, 448 A.2d 1077, 1078 (1982). This

---

12. The legislative intent of the Act is set forth in Section 162.2 which provides,

It is the intention of the General Assembly that this act *shall not merely require proper registration of charitable organizations,* professional fundraisers and professional solicitors, *but shall protect the citizens of this Commonwealth by requiring full public disclosure of the identity of persons who solicit contributions from the public,* the purposes for which such contributions are solicited and the manner in which they are actually used, by promoting consumer education about charitable concerns, by providing civil and criminal penalties for deception and dishonest statements and conduct in the solicitation and reporting of contributions for or in the name of charitable purposes and by publicizing matters relating to fraud, deception and misrepresentation perpetrated in the name of charity. This act shall not be construed to be exclusive in its purview, and its application shall not operate as a bar or otherwise prevent the contemporaneous or subsequent application of any other relevant act or acts.

10 P.S. § 162.2 (emphasis added).

determination is made by comparing the characteristics of the machine against the elements necessary to gambling: (1) consideration;[13] (2) a result determined by chance rather than skill; and (3) reward. *Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. 186, 194, 465 A.2d 973, 977 (1983). If these three elements are present, then the machine will be considered "so intrinsically connected with gambling" as to constitute a gambling device *per se*. *Id.* The Commonwealth has the burden of proving the *per se* nature of the machines. *Commonwealth v. Irwin*, 535 Pa. 524, 527, 636 A.2d 1106, 1107 (1993).

Appellant contends that the machines are used for the purpose of raising money for charity and, accordingly, the element of consideration is not present.[14] No purchase is necessary to play, and each player receives two free games at each visit to Lucky 777. These contentions are unavailing.

The machines are constructed for gambling. Although the player gets two free games on each visit, each game requires eight credits. Once the free credits are used, the player has four credits left. To continue playing, the player must place money into the machine. *See Two Elec-*

*tronic Poker Game Machines*, 502 Pa. at. 194, 465 A.2d at 977 (wherein it was held that consideration was present because a player must insert a coin to activate the machine). By leaving four credits after the free games, the machines are designed to induce players to continue playing for the chance to win money. Thus, the element of consideration is present. This conclusion is not altered by the fact that some of that consideration is used for charitable purposes.[15] Were we to accept Appellant's argument, the owner of a *per se* gambling device could evade 18 Pa.C.S. § 5513 simply by making a token contribution to a charity out of the revenue generated by the machine's use.

Appellant concedes that the machines "intentionally replicate slot machines for the purposes of getting the interest of the customer." Appellant's Brief, 13. The machines entice players to gamble not to make charitable contributions. The standard is not whether the machines could possibly be used for a purpose, such as charitable gift giving, but whether they are "intrinsically connected" to gambling. We conclude that the machines are gambling devices *per se*, and Appellant did not meet its burden of proving lawful possession of

---

**13.** Consideration has been defined as "the inducement to a contract. The cause, motive, price, or impelling influence which induces a contracting party to enter into a contract. Some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss, or responsibility, given, suffered or undertaken by the other." BLACK'S LAW DICTIONARY, 306 (6th ed.1990).

**14.** Appellant does not argue that the other elements, a result determined by chance and reward, are not present. Appellant's Brief, 15. Here, the results are determined by chance; no skill is necessary to play. N.T. 1/10/02 at 87; N.T. 1/17/02 at 14–15, 51. The reward is money or points. N.T. 1/17/02 at 14, 51–52. Further, the machines had dip

switches, knock off devices and meters which are all characteristics of a reward. *Commonwealth v. Two Electronic Poker Game Machines*, 502 Pa. 186, 196–197, 465 A.2d 973, 978 (1983).

**15.** Appellant also contends that the machines were essentially a sweepstakes, similar to those offered by McDonald's and Taco Bell; instead of playing the game on a scratch card, the player plays the game on machine. However, the sweepstakes programs are given to the player free of charge and are used to advertise the business. Here, the machines are not free to play once the player uses his or her two free games and are constructed to encourage gambling.

the machines.[16]

For these reasons, we affirm the trial court.

### ORDER

AND NOW, this 29th day of July, 2003, the order of the Court of Common Pleas of the First Judicial District, dated October 24, 2002, in the above-captioned matter is hereby affirmed.

---

**16.** Appellant contends that the Commonwealth did not meet its burden of proof because the trial court erred in qualifying Officer Bustion and Scott as expert witnesses. Appellant asserts that they did not have the requisite knowledge or experience to conduct an investigation in this matter. Officer Scott and Bustion explained that the machines were illegal gambling devices because they contained all the factors necessary for gambling and had "dip switches," "knock off features," and "meters." that made them illegal *per se.* However, Appellant's Counsel conceded that Officer Scott was qualified to testify as an expert and that Officer Bastion's, "credentials were identical to the other officer's." N.T. 1/17/02 at 48. In any case, even without their testimony, the record is sufficient to support the trial court's conclusion that the machines were gambling devices *per se.*