## Commonwealth v. Bair

*Fred C. Morgan*, assistant district attorney, for Commonwealth.

*Thomas D. Caldwell*, for defendant.

HARGEST, P. J., August 7, 1933.—This case comes before us on a motion for a new trial, which contains a motion to arrest the judgment and discharge the defendant, and we will treat it as the latter motion.

The defendant was charged with maintaining a gambling device, consisting of a mint-vending machine. This machine, about the size of an ordinary cash register, was kept in the place of business of the defendant. At the top is a place for the insertion of a coin of the size of a 5-cent piece. At the right side

is a lever. In front of the machine is a column container with a glass front for the confections which are sold and ejected therefrom. After the insertion of a 5-cent coin, a package of mint is ejected by pulling the lever. The same standard package is always obtained, differing only in flavor. At intervals, in addition to the package of mints, a token or slug about the size of a 5-cent piece is ejected. This token can be played into the machine again, but when played the only thing obtained is a so-called "fortune" which appears on the machine and which is read through a glass window. The "fortunes" are variable because they are obtained through a set of revolving cylinders moving independently of each other, but when they come to rest they make a complete sentence. In addition to obtaining the reading of the "fortunes", the slugs may secure from two to twenty other slugs, which can be used for the purpose of playing the machine and securing the exposure of other so-called "fortunes", humorous or witty sayings, or prophecies. No merchandise or money is obtained at any time through the use of any of the slugs. On the face of the machine is printed in bold type:

"The tokens received from this vender are of 'no value'. Tokens may be received to replay this vender for the customer's sole amusement. This machine vends package confectionery on deposit of every coin. Confections not vended for amusement token".

A verdict of guilty was rendered.

The Commonwealth claims that this machine is a gambling device. Section 55 of the Act of March 31, 1860, P. L. 382, as amended by section 1 of the Act of March 26, 1923, P. L. 32, and section 1 of the Act of April 7, 1925, P. L. 185, provides:

"If any person shall set up or establish, or cause to be set up or established . . . any game or device of address, or hazard, with cards, dice, billiard balls, shuffle boards, or any other instrument, article or thing whatsoever, heretofore or which hereafter may be invented, used and employed, at which money or other valuable thing may or shall be played for, or staked or betted upon; . . . the person so offending in either of the enumerated cases, shall be guilty of a misdemeanor. . . . Provided, That this act shall not be construed to apply to games of recreation and exercise, such as billiards, bagatelle, ten pins, et cetera, where no betting is allowed".

A gambling device is any contrivance or apparatus by which it is declared who is the loser or the winner in a chance or contest on which money or other valuable thing is staked or risked: 2 Bouvier Law Dictionary 1330.

In 27 C. J. 988 it is defined as follows:

"an invention used to determine the question as to who wins and who loses, that risk their money on a contest or chance of any kind; anything necessarily adapted to the use, and necessarily used in the carrying on, of any gambling game; an instrumentality for the playing of a game upon which money may be lost or won; anything which is used as a means of playing for money or other thing of value, so that the result depends more largely on chance than skill".

The question before us is whether the machine in the instant case is a gambling device. In Commonwealth v. Goldsmith, 17 D. & C. 145, it is held that the machine in that case was such a device, but that machine was "so constructed that by the removal of a single pin the chances of the player are that he may receive money in addition to the merchandise received, up to the amount of twenty nickels, or one dollar." There is no evidence that any such result could be obtained from the machine involved in the instant case. The machine in question is what is known as a "Mills vending machine".

There is no Pennsylvania case directly in point, decisive of this question. There are cases in other jurisdictions both ways: Harvie v. Heise, Sheriff, et al., 150 S. C. 277, 148 S. E. 66; State v. Mint Vending Machine et al., 85 N. H. 22, 154 Atl. 224; Howell v. State, 184 Ark. 109, 40 S. W. (2d) 782; State v. Baitler (Me.), 161 Atl. 671; Snyder v. City of Alliance et al., 41 Ohio App. 48, 179 N. E. 426. In each of the cases just cited, the decision is made to turn either on the lure to play the machine, which, it is suggested, is an encouragement of the gambling instinct, or on the fact that there is the chance to get slugs in irregular numbers, or on the conclusion that the "amusement" is a "thing" of value. In Harvie v. Heise, Sheriff, et al., supra, it is said (pp. 286, 287):

"even if it should be conceded that it is the sincere purpose of the owner, that the checks be played only for the amusement of the operator, we cannot say that they have no value whatever; for it must be that the amusement or entertainment furnished the player is worth something to him, if it constitutes the inducement for him to operate the machine.

". . . we are satisfied that the checks or tokens have some monetary or trade value, and, in view of the fact that they are released by the machine at irregular intervals and in uncertain numbers, the element of chance is always present, and there is no certain and uniform return in value for the coin deposited in the machine."

In State v. Baitler, supra, it was held that the lack of uniformity in the number of tokens delivered shows that the element of chance was always present and "the allurement of something for nothing was attendant", and that the slugs "evidenced right to operate the 'amusement.' . . . '. . . '. . . affording the necessary lure to indulge the gambling instinct." ' "

In Snyder v. The City of Alliance, supra, the machine is condemned as a gambling device. It is there said (p. 54):

"Its purpose is to increase the sale of mints by appealing to the gambling instinct, and this increase in sales, and other accruing profit by way of advertisement, is a gain to the owner or lessee of the machine. . . .

". . . the lure and chance in the appellant's machine is there to appeal to the gambling propensity in us; . . . and that it [the machine] may without change pay money or merchandise for tokens if a lessee should have a moral lapse and breach his contract with the owner without the owner's knowledge or consent."

This is upon the assumption that a different use could be made of a machine if the owner indulged in maintaining a gambling house quite apart from the machine.

In Howell v. State, supra, it is said (p. 112):

"The majority is of opinion that since, by the operation of the machine, the player stands a chance to win something in addition to the package of mints sold and delivered him at the regular price by the delivery at irregular intervals of the tokens, which may be played back into the machine, causing the machine to operate and the pictures to be exhibited thereon, that they are included in the expression in the statute 'any representative of anything that is esteemed of value' ".

In State v. Mint Vending Machine et al., supra, the court put the matter on the excitement of "the gambling instinct" of the operator, thereby inducing him to make excessive purchases of mints.

In Chambers, Mayor, et al. v. Bachtel, 55 F. (2d) 851, a Mills machine was condemned as a gambling device. The court said (pp. 852, 853):

"He would be a credulous person indeed who could believe that the customers playing with nothing but tokens expected only amusement and were not actu-

ated by the belief that they could exchange them for money or other thing of value. It is of no significance that there was no agreement to redeem the tokens in cash or in goods. . . . But if there is any doubt about the machine being a gambling device when operated by tokens, there can be none when it is played with coins, for then money is won or lost, depending upon the positions in combination of the amusing pictures when the cylinders, after revolving, came to rest."

In the case just referred to it is held that the machine is a gambling device when a pin is removed. There is no evidence in the instant case that any pin can be removed to convert the machine into a gambling device, and the machine in plain and unmistakable terms bore on its face a statement that tokens were of no value. There is no evidence that it was otherwise used than has been heretofore stated.

Criminal statutes must be strictly construed. Whatever we think about this maxim of the law in the present day, it nevertheless is still thoroughly imbedded in our jurisprudence and, until extracted from our juridical system, should be followed. We cannot say that it should be applied to certain criminal statutes and not to others; that the laws with reference to gambling should be liberally construed while laws relating to larceny should be still under the ban of strict construction. That being so, when we turn to any definition of gambling or gaming, we find the words "thing of value" or their necessary synonyms and that a "thing of value" must be won or lost, depending upon a chance: 27 C. J. 988. When we turn to the Pennsylvania statute, we find the language "at which money or other valuable thing may or shall be played for, or staked or betted upon".

Can it be reasonably said that the mere "lure" to play a machine, to read either a witty saying or an absurd prophetic fortune, is a "thing" of value under any strict or even fairly liberal construction? Is amusement a "thing", as that word was used in the definitions of gambling or gaming, including the Pennsylvania statute? Certainly the slugs obtained could not be considered "things" of intrinsic value, because their value is so de minimis that it could not be measured in our money. An "amusement" is a mental operation quite apart from the word "thing", as ordinarily used, which means something tangible. So we are unable to follow the reasoning of the cases which we have heretofore cited and referred to, which hold that the furnishing of amusement through the means of slugs enabling a further operation of the machine to read a funny fortune or the lure to play the machine is such a game of chance as is within the prohibition of gambling.

In Commonwealth v. Goldsmith, 17 D. & C. 145, Judge Evans said (p. 146) : "an apparatus is a gambling device where there is anything of value to be won or lost, no matter how small the intrinsic value, as the result of chance."

In Commonwealth v. Hollands, 4 D. & C. 594, Judge Wickersham, speaking for this court, was considering a nickel in the slot machine which was unquestionably a gambling device because a "profit-sharing" coupon might be obtained in addition to the mints received. In the opinion, he dealt with the element of chance, and the syllabus to that case, interpreting the opinion, reads:

"Wherever the element of chance enters into the operation of a nickel-in-the-slot machine, such machine is operated in violation of section 55 of the Act of March 31, 1860, P. L. 382."

We are now of opinion that this language is too broad; that there must be something more than the mere element of chance. It must be a chance that yields something of intrinsic value.

In Overby v. Oklahoma City, 46 Okla. Cr. 42, 287 Pac. 796, the same Mills vending machine was before the court. In that case it was said:

"A slot machine is not per se a gambling device: 12 R. C. L. 729; 27 C. J. 968; Nelson v. State, 37 Okla. Cr. 90, 256 Pac. 939. It is only when a slot machine comes within a definition of a gambling device, as where it delivers some commodity in a varying quantity, or where the player may receive, depending on chance, something of value or a token of some kind redeemable for something of value, or where there is some other element which appeals to the gambling instinct, that it is a gambling device. 27 C. J. 989; 2 Bouvier Law Dict. (Rawle) Gambling, p. 1330; 4 Words and Phrases, first series, p. 3029; State v. Johnson, 15 Okla. Cr. 460, 177 Pac. 926; Nelson v. State, supra. Where the commodity vended by a machine is unvarying, where no check or token of any value or redeemable or playable for anything of value in addition to the commodity vended is received, it is not a gambling device."

The courts have held that a machine such as the machine in the instant case was not a gambling device.

In The People v. Jennings, 257 N. Y. 196, 177 N. E. 419, a similar machine was involved. The Court of Appeals, speaking through Crane, J., said (p. 197) :

"It is conceded that in its operation there is no element of chance for the winning or losing of money or any check or memoranda calling for money. By the dropping of a coin in the slot and the pulling of a lever a candy mint falls out of the machine and a witty or funny saying appears in an upper panel. One or more metal rings of no intrinsic value may also fall out, according to combinations formed upon the turn of the lever. These rings or metals have no money value. By their insertion in the slot other bright or witty statements appear in the panel. The only chance connected with the operation of the machine is that wit or humor may momentarily brighten up the vacuous minds hunting amusement. In this machine age even humor is manufactured.

"The product, however, is valueless from a monetary standpoint, perhaps, if not from any other."

Then, referring to the New York statute, Judge Crane continues: "Our statutes apparently recognize that the gambler plays for money, not for literature."

The Pennsylvania statute emphasizes that the device must be used for gambling, in the sense that something of intrinsic value is played for. It contains the proviso "That this act shall not be construed to apply to games of recreation and exercise, such as billiards, bagatelle, ten pins, et cetera, where no betting is allowed". Assuming that the authorities hereinbefore cited from other jurisdictions are sound, they cannot be applied to our statute, insofar as they hold that mere amusement is a thing of value and that obtaining additional amusement through the medium of securing slugs makes the machine a gambling device. The Standard Dictionary gives "recreation" as one of the synonyms of "amusement", and the proviso of the Pennsylvania statute declares that a game of recreation where no betting is allowed is not to be considered gambling. So the apparatus upon which such a game is played could not be considered a gambling device. It is true that the proviso referring to the games of recreation and exercise names "billiards, bagatelle, ten pins, et cetera", but we think the principle would include any simple game of recreation and exercise, because of the words "et cetera". Therefore, a fair construction of the proviso of the statute would eliminate from its condemnation any device used for innocent amusement, though the element of chance is contained in it. There is the element of chance in a game of billiards. The player continues his play as long as he makes good shots. He ceases when he does not. Moreover, the cases above referred to, insofar as they have held that where a slot machine may be used for

gambling by the removal of a certain pin it is a gambling device, although the pin has not been removed and it has not been so used, cannot apply to the instant case, where there is no evidence that the machine can be so used. A billiard table may be used for gambling without the removal of anything, and under that reasoning it should be condemned. The proviso of the Pennsylvania statute declares that billiards unaccompanied by betting is not gambling.

It would probably be wise to prohibit the use of machines that excite or lure one to encourage the gambling instinct, but that is a legislative question. Encouraging the gambling instinct is one thing, gambling is quite another. The legislature has made the latter, and not the former, a misdemeanor. Until it does, the court cannot condemn a machine used for the former but not the latter purpose.

We are therefore of opinion that the machine in question is not a gambling device under the act of assembly of this State, and that the conviction of the defendant cannot be allowed to stand.

Now, August 7, 1933, the motion in arrest of judgment is sustained and the defendant is hereby discharged.

From Homer L. Kreider, Harrisburg, Pa.