**[J-96-2025, J-97-2025] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: THREE PENNSYLVANIA SKILL AMUSEMENT DEVICES, ONE GREEN BANK BAG CONTAINING $525.00 IN U.S. CURRENCY, AND SEVEN RECEIPTS | : : : : : | No. 50 MAP 2024 <br><br> Appeal from the Order of the Commonwealth Court at No. 707 CD 2023 entered on November 30, 2023, Affirming the Lower Court Order of the Dauphin County Court of Common Pleas at No. 2022-CV-06333-MD entered on March 23, 2023 |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : : : : : : : : : | |
| | : | ARGUED: November 20, 2025 |
| POM OF PENNSYLVANIA, LLC | : : : | No. 2 EAP 2024 <br><br> Appeal from the Order of the Commonwealth Court entered on January 16, 2024, at No. 418 MD 2018 |
| v. | : : : : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE, AND CITY OF PHILADELPHIA, | : : : : : : | ARGUED: November 20, 2025 |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF REVENUE | : : : : | |

## CONCURRING OPINION

**JUSTICE DONOHUE**                    **DECIDED: June 15, 2026**

The Majority does not address the two cases before us as independent of one another, despite each case involving separate statutes and distinct procedural histories. For purposes of this opinion, I distinguish between the two appeals. I join the Majority in part and write separately to delineate my reasoning as follows.

**POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue, et al. ("Declaratory Judgment Appeal")**

As a result of multiple seizures of Pennsylvania Skill Amusement devices ("POM devices") by the Philadelphia Police Department's Vice Unit from 2017 through 2018, POM of Pennsylvania, LLC ("POM") filed a petition for review in the Commonwealth Court seeking a declaratory judgment that its POM device is lawful under Section 5513 of the Crimes Code[1] and joined the City of Philadelphia and the Department of Revenue ("DOR").  DOR responded and asserted a counterclaim, alleging that the POM device is a slot machine under the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904 ("Gaming Act") and that POM is in violation of the Gaming Act for failing to obtain a license.  DOR eventually filed an application for summary relief requesting a declaration of the same.  The Commonwealth Court agreed that the POM device is a slot machine under the Gaming Act but determined that the Gaming Act only "regulates **licensed** slot machines in **licensed** facilities."  *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717, 731 (Pa. Commw. 2019) (emphasis in original).  Consequently, the Commonwealth Court held that unlicensed slot machines are not subject to the Gaming Act.  *Id.*  Our review of the Declaratory Judgment Appeal is thus limited to the provisions of the Gaming Act.

I join the Majority's holding that the Gaming Act applies to POM and its POM devices.  Specifically, I agree that the Gaming Act could not be more clear that it covers "the manufacture and supply of slot machines 'in this Commonwealth,' not only with respect to those slot machines destined for 'licensed facilities' or to be used by 'licensed

---

[1]  18 Pa.C.S. § 5513.

entities.'" Majority Op. at 43 (quoting 4 Pa.C.S. § 1103). I further agree with the Majority's interpretation of Subsections 1317.1(e)(1) and 1518(a)(4), such that the use of the term "person" indicates the General Assembly's intent that those provisions are not limited to "licensed entities." *Id.* at 44-47 (citing 4 Pa.C.S. §§ 1317.1(e)(1), 1518(a)(4)). Finally, for the reasons explained by the Majority, "the Gaming Control Board's approval is [not] the sine qua non of a 'slot machine' under the Gaming Act." *Id.* at 55-57. Thus, I agree that "[t]he POM device qualifies as a slot machine because it is a 'computerized … machine' that meets all of the other elements that define a 'slot machine.'" *Id.* at 57 (quoting 4 Pa.C.S. § 1103). I concur in the result of the Majority in the Declaratory Judgment Appeal reversing the judgment of the Commonwealth Court.

**In re Three Pennsylvania Skill Amusement Devices ("Forfeiture Appeal")**

In the Forfeiture Appeal, Champions Sports Bar, LLC ("Champions") obtained three POM devices through a business arrangement with Capital Vending, LLC ("Capital Vending"), which is the lawful owner of the POM devices. The Pennsylvania State Police's Bureau of Liquor Control Enforcement ("BLCE") conducted a warrantless search and seizure of the POM devices from Champions pursuant to its authority under 42 Pa.C.S. §§ 5803(a)(7), (b)(4), (b)(6)[2] and 18 Pa.C.S. § 5513(b), and without filing criminal

---

[2] Section 5803 provides, in pertinent part,

> **(a) Applicability.**–Notwithstanding any law to the contrary, this section shall apply to forfeitures conducted under the following:
>
> * * *
>
> (7) 18 Pa.C.S. § 5513 (relating to gambling devices, gambling, etc.).

(continued…)

charges under 18 Pa.C.S. § 5513(a).  OAG's Answer and New Matter, *In re Three Pa. Skill Amusement Devices*, No. 2022 CV 6333-MD, 9/8/2022, ¶¶ 4, 12.  Subsection 5513(b) provides that "[a]ny gambling device possessed or used in violation of the provisions of subsection (a) shall be seized and forfeited to the Commonwealth."  18 Pa.C.S. § 5513(b).  Champions and Capital Vending (collectively, "Appellees") filed a petition for return of property on the ground that the seizure did not satisfy Subsection 5513(b) because the POM devices are not gambling devices.  Petition for Return of Property, *In re Three Pa. Skill Amusement Devices*, No. 2022 CV 6333-MD, 8/23/2022, ¶ 12.  The Office of Attorney General ("OAG") filed an answer and new matter asserting that the POM devices are gambling devices used in violation of Subsection 5513(a) and therefore, the seizure was justified under Subsection 5513(b).  OAG's Answer and New Matter, ¶ 61.  The trial court ruled in favor of Appellees, finding that the POM devices were not gambling devices and Appellees were entitled to the return of the devices.  OAG

---

**(b) Process and seizure of money and personal property.**—Property subject to forfeiture may be seized by a law enforcement authority if any of the following apply:

\*   \*   \*

(4) There is probable cause to believe that the property has been used or is intended to be used in violation of the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act, or another offense for which forfeiture is expressly authorized as a sanction.

\*   \*   \*

(6) There is probable cause to believe that the property is subject to forfeiture and exigencies are likely to result in the destruction or removal of the property.

42 Pa.C.S. § 5803(a)(7), (b)(4), (b)(6).

appealed to the Commonwealth Court, which affirmed the ruling of the trial court. OAG

appealed to this Court, raising the following issues:

> 1. Does an electronic slot machine cease to be an illegal "gambling device," governed predominantly by chance, if the machine's manufacturers embed into its programming a so-called "skill" element that is almost entirely hidden from view and is almost impossible to complete?
>
> 2. Should gambling statutes governing "slot machines" be read *in pari materia* to supply an appropriate definition of the term?

*In re Three Pa. Skill Amusement Devices*, 320 A.3d 673 (Pa. 2024) (per curiam).

I agree with the Majority's holding that the Commonwealth Court's decision that

the POM device is not a prohibited device under Section 5513 of the Crimes Code must

be reversed, but I would reverse on different grounds. The Majority holds that to establish

a violation under Subsection 5513(a)(1), the Commonwealth need only prove that the

POM device is a slot machine as defined in the Gaming Act. Majority Op. at 61. In my

view, this misses the issue before this Court. In this appeal, we are addressing a forfeiture

action under Subsection 5513(b) which requires us to determine whether the POM

devices are "gambling devices" that may be subject to forfeiture under 18 Pa.C.S. §

5513(b). The Forfeiture Appeal is properly resolved pursuant to the plain text of

Subsection 5513(b) and our decision in *Commonwealth v. Two Electronic Poker Game*

*Machines*, 465 A.2d 973 (Pa. 1983) ("*Two Poker Machines*"). The Majority's importation

of the definition of "slot machine" from the Gaming Act to the meaning of "slot machine"

under Subsection 5513(a), and its conclusion that slot machines need not be "used for

gambling purposes," fails to answer the key question for the forfeiture provision in

Subsection 5513(b): is the seized slot machine a "gambling device?" I conclude that it is.

**Statutory Construction**

To address the lawfulness of the forfeiture, we must interpret Section 5513 which, according to the BLCE, provided the authority for its confiscation of the POM devices in this case. The relevant provisions of Section 5513 provide as follows:

> **(a) Offense defined.--**A person is guilty of a misdemeanor of the first degree if he:
>
> > (1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;
> >
> > (2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;
> >
> > (3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or
> >
> > (4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.
>
> **(b) Confiscation of gambling devices.--**Any gambling device possessed or used in violation of the provisions of subsection (a) shall be seized and forfeited to the Commonwealth. The forfeiture shall be conducted in accordance with 42 Pa.C.S. §§ 5803 (relating to asset forfeiture), 5805 (relating to forfeiture procedure), 5806 (relating to motion for return of property), 5807 (relating to restrictions on use), 5807.1 (relating to prohibition on adoptive seizures) and 5808 (relating to exceptions).
>
> *      *      *
>
> **(e.1) Construction.--**Nothing in this section shall be construed to prohibit any activity that is lawfully conducted under any of the following:
>
> *      *      *

(4) 4 Pa.C.S. (relating to amusements).

18 Pa.C.S. §§ 5513(a)(1)-(4), (b), (e.1)(4).  Relevant to the underlying forfeiture action, a "gambling device possessed or used in violation of subsection (a)" shall be seized unless it is otherwise lawful under the Gaming Act.  18 Pa.C.S. §§ 5513(b), (e.1)(4).  Applying our well-worn tools of statutory construction,[3] we first consider the plain language of the forfeiture provision.  Beginning with the text of the statute, Subsection 5513(b) permits the seizure and forfeiture of "**any gambling device** possessed or used in violation of the provisions of subsection (a)[.]"  18 Pa.C.S. § 5513(b) (emphasis added).  According to its terms, there are two types of gambling devices that may be seized: (1) a device that is possessed in violation of Subsection (a); or (2) a device that is used in violation of Subsection (a).  In either case, the Commonwealth's authorization to seize applies to gambling devices only.

Turning to Subsection 5513(a)(1), the statute prohibits intentionally or knowingly manufacturing or supplying certain devices, specifically "any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards."  18 Pa.C.S. § 5513(a)(1).  Beginning with the plain meaning of the words "punchboard, drawing card, [and] slot machine," we look to the dictionary definitions of those words at

---

[3]  Our object "is to ascertain and effectuate the intention of the General Assembly[,]" and we do so by construing the statute "to give effect to all its provisions."  1 Pa.C.S. § 1921(a).  Absent ambiguity, statutes are given their plain meaning.  *Id*. § 1921(b).  "We ascertain the plain meaning of a statute by ascribing to its particular words and phrases the meaning which they have acquired through their common and approved usage, and in context."  *O'Neill v. State Emps. Ret. Sys.*, 280 A.3d 873, 881 (citing 1 Pa.C.S. § 1903).  In this exercise, "we strive to determine its meaning at the time the General Assembly enacted the legislation."  *Id.* at 885 n.8.  Further, as a matter of statutory interpretation, "although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say."  *Thompson v. Thompson*, 223 A.3d 1272, 1277 (Pa. 2020).

the time the General Assembly enacted the legislation. *See O'Neill*, 280 A.3d at 885 ("To discern the legislative meaning of words and phrases, our Court has on numerous occasions engaged in an examination of dictionary definitions."); 1 Pa.C.S. § 1961 ("Whenever a statute reenacts a former statute, the provisions common to both statutes shall date from their first adoption."). Importantly, the language of this provision first appeared in the Act of April 29, 1925, P.L. 357, No. 208, which made it a misdemeanor to "make, manufacture, or assemble any punchboard, drawing card, slot machine, or any machine or device used or intended to be used for gambling." This language was largely reenacted in 1972, when the General Assembly codified criminal laws within this Commonwealth and has since remained unchanged. *See* Act of Dec. 6, 1972, P.L. 1482, No. 334.

Around the year 1925, the dictionary definition of the term "slot machine" was "a machine the operation of which is started by dropping a coin into a slot." *Slot machine*, WEBSTER'S COLLEGIATE DICTIONARY (3d. ed. 1927). The definitions of "slot machine" in 1927 and 1972 were materially the same. *See Slot Machine*, WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1972) ("a machine whose operation is begun by dropping a coin into a slot"); *see also Slot*, THE CONCISE OXFORD DICTIONARY OF CURRENT ENGLISH (5th ed. 1972) ("Groove, channel, slit, or long aperture, made in machine etc. to admit some other part, esp. slit for penny or other coin that sets working a machine or automatic retailer of small wares[.]"); *see also Slot Machine*, COLLINS ENGLISH DICTIONARY (1972) ("an automatic machine worked by the insertion of a coin."); *see also Slot Machine*, CHAMBERS TWENTIETH CENTURY DICTIONARY (1972) ("one operated by inserting a coin in a slot[.]"). While "punchboard" and "drawing card" do not appear in early dictionaries, both are

associated with lotteries—a punchboard being a box with numerous holes covered with paper or foil which contained prizes varying from cheap merchandise to cash and a drawing card is a card with a number written on it which corresponds to an individual. *See* JOHN SCARNE, SCARNE'S COMPLETE GUIDE TO GAMBLING 625-626 (1961) (discussing the history of punchboards); *Affiliated Enters. v. Gantz*, 86 F.2d 597, 598 (10th Cir. 1936) (describing a system "for giving away money prizes by lot or chance in theatres or other places of entertainment open to the public on payment of an admission fee[,]" which entailed the use of "drawing cards" which "are made out corresponding with the registration numbers and put into a receptacle from which the drawing will be made").

The definition of "slot machine" and the common understanding of punchboard and drawing card demonstrates that they have both innocuous uses and gambling uses. However, such devices are only prohibited when they are used for gambling purposes.[4] Like the Commonwealth Court in this case, the decisions of several other lower courts solidify this principle. Those courts have analyzed whether slot machines contain the three essential elements of gambling when deciding whether they qualify as gambling devices. *See Commonwealth v. 9 Mills Mechanical Slot Machines*, 437 A.2d 67, 70 (Pa. Commw. 1981) ("The undisputed evidence in this case reveals that Angelo did maintain and lease the nine slot machines and the two other devices, which **were used for**

---

[4] Notably, I discern no error in the Majority's conclusion that the Gaming Act and Section 5513 create a unified statutory scheme (i.e., that the statutes are in pari materia), and that the definition of "slot machine" in the Gaming Act must be the definition of "slot machine" in Subsection 5513(a)(1). *See* Majority Op. at 39-41. However, any definition of "slot machine" does not change the analysis that must be conducted under Subsection 5513(a)(1). Whatever technical specifications are assigned to the term, it must still be used for gambling purposes (or in other words a gambling device) to fall under the prohibition in Subsection 5513(a)(1).

**gambling purposes**, to the Club. Therefore, the slot machines and the two other devices were 'gambling devices possessed or used in violation of subsection (a).'") (emphasis added); *Commonwealth v. Wintel, Inc.*, 829 A.2d 753, 757-58 (Pa. Commw. 2003) (applying the three-part test and finding that the video slot machines were gambling devices per se). This demonstrates that courts have not regarded the mere presence of a slot machine as dispositive; rather, they have evaluated whether the machine satisfies the elements of gambling.

Case law from other jurisdictions is likewise consistent with this interpretation. For example, in *Fey v. Rossi Improvement Co.*, a California district court explained "[i]t is a matter of common knowledge that coin-operated slot machines are manufactured and generally used by small tradesmen, places of amusement, and public service corporations, upon the result of the action of which money or other thing of value is not hazarded, … which vend small articles of merchandise such a[s] candy, cigars, stamps, etc., and those which control gas and telephone service."[5] *Fey v. Rossi Improvement Co.*, 139 P. 908 (Cal. Dist. Ct. App. 1914); *see Automatic Slot-Machines*, 25 Pa. D. 671 (Atty Gen. Apr. 17, 1916) (describing similar devices); *Kirk v. Morrison*, 146 So. 215, 217

---

[5] Another example of early slot machines is the slot machine at issue in *Mills Novelty Co.*, which was operated by inserting a coin into a slot and pulling a lever which would spin reels in the machine and dispense a package of mints. Occasionally, the machine would also dispense tokens which could be used in place of a nickel to tell a player their "fortune." However, this machine could be altered by the operator by bending a prong inside the machine which allowed the tokens to dispense nickels in varying amounts based on the result of the reels. This Court found that the existence of this mechanism "was sufficient to satisfy a court that the machines were, within the meaning of the act of 1925, [ ] manufactured by appellant with the intent that they should be used for gambling." *In re Mills Novelty Co.*, 175 A. 548, 553 (Pa. 1934); *cf. Commonwealth v. Bair*, 20 Pa. D. & C. 23, 27-28 (Dauphin Cty. 1933) (finding that an otherwise identical slot machine was not a gambling device because there was no evidence of the existence of the prong mechanism or that it was actually being used for gambling).

(Fla. 1933) ("In some states every 'slot machine' is by statute to be deemed a gambling device. But in states such as ours, where no such statutory definitions exist, the use to which a 'slot machine' is put, or designed to be put, must determine its character as a device for gaming or gambling. The courts are not permitted to take judicial notice that every slot machine, as such, is a gambling device."). A punchboard could have slips containing the name of a checkers setup and if the player could identify the proper solution he would receive a box of candy. *Johnson v. McDonald*, 287 P. 220 (Or. 1930). A drawing card could be used for purposes other than a lottery, such as determining who among a family would be assigned certain household chores.

The General Assembly's intent when it drafted the statute was to prohibit "punchboard[s], drawing card[s], slot machine[s] or any device[s] to be used for gambling purposes." 18 Pa.C.S. § 5513(a)(1). Unlike the Majority, I read "to be used for gambling purposes" as qualifying "punchboard, drawing card, slot machine" and "any device." While the plain language is clear on its own, the title of the statute reads "Gambling devices, gambling, etc.", 18 Pa.C.S. § 5513, and when passed in the Act of April 29, 1925, P.L. 357, the title was "Manufacture of gambling devices." *See* 1 Pa.C.S. § 1924 (permitting the title of a statute to be considered in statutory construction). Because a slot machine is not a gambling device unless it is "used for gambling purposes," as explained above, the qualifier must modify "slot machine." Under my reading, this provision uses "a straightforward, parallel construction that involves all nouns or verbs in a series" which is followed by a modifier that "applies to the entire series." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (explaining the series qualifier cannon). This interpretation "reflects the most natural reading of [the] sentence." *Id.* at 403. Indeed,

nothing in Section 5513 could support the conclusion that it is a misdemeanor to intentionally make a slot machine featuring a Jeopardy™-style game won solely by the use of the player's knowledge.[6]

This interpretation is consistent with the remaining provisions in Subsection 5513(a), which also prohibit activities relating to gambling. The remaining provisions in Subsection 5513(a) prohibit "allow[ing] persons to collect or assemble[,]" "solicit[ing] or invit[ing] any persons to visit[,]" or "being the owner, tenant, lessee or occupant of any premises, knowingly permit[ting] or suffer[ing] the same, or any part thereof, to be used" for the purpose of unlawful gambling. *See* 18 Pa.C.S. §§ 5513(a)(2)-(4).

While mere possession of a device described in Subsection 5513(a) cannot justify a conviction under that Subsection (and is thus not a "violation of the provisions of subsection (a)," 18 Pa.C.S. § 5513(b)), *see Commonwealth v. Dumont*, 536 A.2d 342, 349 (Pa. Super. 1987); *Commonwealth v. Bretz*, 433 A.2d 55, 58 (Pa. Super. 1981), the Commonwealth may seize devices that can be used for no purpose other than gambling, i.e., a gambling device per se, because "[w]hen the nature of the device is shown to be such as fits them solely for an unlawful purpose," the owner has no property rights to such a device. *See In re Trombetta*, 156 A.2d 107, 110 (Pa. 1959) (Musmanno, J., dissenting) (internal citation omitted).[7] Consequently, even if a device "is similar to a slot machine" it

---

[6]  This would be the effect of the Majority's interpretation of Subsection 5513(a)(1), discussed infra, which finds that "to be used for gambling purposes" only modifies "device." *See* infra pp. 16, 18-20.

[7]  This reasoning is bolstered by Subsection 5513(c), which permits the possession of antique slot machines provided that they are not used for gambling purposes. *See* 18 Pa.C.S. § 5513(c) (defining antique slot machine as a slot machine "manufactured at least [twenty-five] years before the current year **and** that it was not used or attempted to be used for any unlawful purpose" and providing an exception to Subsection 5513(b) that (continued…)

still must be established that it is a gambling device per se or that it is used for gambling purposes to be subject to seizure and forfeiture under Subsection 5513(b). *See 9 Mills Mechanical Slot Machines*, 437 A.2d at 70-71 (finding that "[t]he Gold Cup machine is similar to a slot machine" and even if it was not a gambling device per se, it was undisputed that it was being "used for gambling purposes in violation of Section 5513(a)"). Therefore, the POM device may be seized pursuant to Subsection 5513(b) if it is a gambling device per se or if it is a device used for gambling purposes in violation of Subsection 5513(a). In the context of a forfeiture, only once it has been determined that the device is a gambling device do we examine whether the gambling is "lawfully conducted" under the Gaming Act, and thus not prohibited by the Crimes Code. *See* 18 Pa.C.S. § 5513(e.1)(4).

The statute does not define "gambling device," nor does any other part of the Crimes Code.[8] This Court in *Two Poker Machines* held that the inquiry is "whether the machine is 'so intrinsically connected with gambling' as to constitute a gambling device per se." *Two Poker Machines*, 465 A.2d at 977 (quoting *Nu-Ken Novelty, Inc. v. Heller*, 288 A.2d 919, 920 (Pa. Super. 1972)). In that case we held that determining whether a device is "intrinsically connected with gambling" such that it is subject to forfeiture "will turn on the characteristics of the machine when read against the three elements necessary to gambling: consideration, a result determined by chance rather

_____

"no antique slot machine seized from any defendant shall be destroyed or otherwise altered until the defendant is given an opportunity to establish that the slot machine is an antique slot machine." If the defendant satisfies this burden, then "the slot machine shall be returned … otherwise, the slot machine shall be destroyed.") (emphasis added).

[8] The Gaming Act also does not define "gambling device."

than skill, and a reward." *Two Poker Machines*, 465 A.2d at 977. The Majority explains that the "legal standard for evaluating the second element of gambling—skill versus chance—has come to be known as the 'predominant factor test.'" Majority Op. at 9 (citing *Pinnacle Amusement, LLC v. Bureau of Liquor Control Enf't*, 298 A.3d 447, 452 (Pa. Commw. 2023); *In re Three Pa. Skill Amusement Devices*, 306 A.3d 432, 442-43 (Pa. Commw. 2023)). The predominant factor test examines "the relative amounts of skill and chance present in the play of each machine and the extent to which skill or chance determines the outcome." *Two Poker Machines*, 465 A.2d at 977.

*Two Poker Machines* involved the seizure and forfeiture of an electronic poker game, the "Electro-Sport," and blackjack machines[9] pursuant to Subsection 5513(b). In addressing whether the result was "determined by chance rather than skill" in the Electro-Sport game, the Court found that it had some element of skill because a player's knowledge of statistics could "improve a player's chances of winning and [could] maximize the size of the winnings[.]" *Id.* at 978. More importantly, however, the Court found that "a large random element [was] always present" because "chance determine[d] the cards dealt from which one [could] draw[.]" *Id.* Thus, the Court concluded that "[s]kill can improve the outcome in Electro-Sport; it cannot determine it." *Id.* After finding that the elements of reward and consideration were present, the Court held that Electro-Sport was a gambling device per se. *Id.* at 978-79.

This Court has repeatedly emphasized that the Commonwealth must establish the elements of gambling to justify forfeiture. For instance, in *Two Poker Machines*, 465 A.2d

---

[9] *Two Poker Machines* involved three cases consolidated for appeal, and the devices were not the same across each case. *See Two Poker Machines*, 465 A.2d at 975. Of the three devices, only the Electro-Sport was found to be a gambling device per se. *Id.*

at 979-80, this Court addressed two electronic poker machines (not the Electro-Sport) and a blackjack machine and found that although the devices were not gambling devices per se, "they had been used for illegal gambling." In *Commonwealth v. Twelve Dodge City Video Poker Machines*, 537 A.2d 812, 814 (Pa. 1988), addressing the seizure of twelve poker machines, we found that the reward element was missing from the devices and we rejected the Commonwealth's argument that the devices could be easily altered to provide players a reward. Emphasizing the importance of the elements of gambling to justify forfeiture, we determined that "the mere possibility of using a device for gambling purposes is not what allows for its confiscation under [Subsection] 5513(b)[.]" Finally, in *Commonwealth v. Irwin*, 636 A.2d 1106, 1109 (Pa. 1993), we found that the reward element was absent from the seized devices because the distinctive feature of knock down switches and meters was not present and the tokens awarded to the players were worth less than the cost of playing the games. We explained that "the reasoning behind our cases holding devices with knock down switches and meters are gambling devices per se, is that there is no legal use for these mechanisms on these machines." *Irwin*, 636 A.2d at 1109. However, we advised that the Commonwealth was not prevented from establishing that the machines were "actually being used in an impermissible manner." *Id.* Consequently, it is not enough to establish that a device is or is not a "slot machine" wholly independent from gambling because the inquiry under Subsection 5513(b) is whether the device is a gambling device per se or it has been used for gambling purposes.

Thus, using the standard set forth in *Two Poker Machines*, the Court must decide whether the POM device contains all the elements of gambling to constitute a gambling device per se or whether there is evidence that the device has been used for gambling

purposes. However, before turning to the application of this test, I address the Majority's statutory construction detour.

### The "Slot Machine" Test

The Majority does not apply the *Two Poker Machines* test to the Forfeiture Appeal to determine whether the POM device is a gambling device per se subject to forfeiture under Subsection 5513(b). The Majority approaches the case from a fundamentally different premise. Specifically, the Majority finds that the Gaming Act and the Crimes Code form a "unified statutory scheme" and that Subsection 5513(e.1) "holds the key to understanding the entire statutory scheme[,]" including, apparently, the operation of Subsection 5513(b). Majority Op. at 39. From that premise, the Majority begins its inquiry with Subsection 5513(a)(1), which defines as an offense the intentional or knowing making, assembly, setting up, etc. "of any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards." Applying the last-antecedent rule, the Majority divorces the term "slot machine" from the qualifying phrase "to be used for gambling purposes," concluding that a slot machine need not itself "be used for gambling purposes" to fall within the statute. Majority Op. at 58. Based on the Majority's interpretation, setting up a slot machine is unlawful even if that slot machine is not intentionally or knowingly set up "to be used for gambling purposes." 18 Pa.C.S. § 5513(a)(1).

Having reached that conclusion, the Majority next turns to the meaning of "slot machine." Relying on Subsection 5513(e.1)(4), which states that activity that is "lawfully conducted" under the Gaming Act is not prohibited by the Crimes Code, the Majority reasons that courts must first "look to the Gaming Act to determine whether activities

concerning slot machines are 'lawfully conducted.'" *Id.* at 40-41. In the Majority's view, "an activity that is **not** lawful under the Gaming Act remains subject to Section 5513(a) of the Crimes Code." *Id.* at 40 (emphasis in original). The Majority thus concludes that, because these statutes operate as a unified scheme, the Gaming Act's definition of "slot machine" necessarily controls the meaning of that term in the Crimes Code as well.[10]

The Gaming Act defines "slot machine," in pertinent part:

> (1) The term includes:
>
>> (i) Any mechanical, electrical or computerized contrivance, terminal, machine or other device approved by the Pennsylvania Gaming Control Board which, upon insertion of a coin, bill, ticket, token or similar object therein or upon payment of any consideration whatsoever, including the use of any electronic payment system except a credit card or debit card, is available to play or operate, the play or operation of which, whether by reason of skill or application of the element of chance or both:
>>
>>> (A) May deliver or entitle the person or persons playing or operating the contrivance, terminal, machine or other device to receive cash, billets, tickets, tokens or electronic credits to be exchanged for cash or to receive merchandise or anything of value whatsoever, whether the payoff is made automatically from the machine or manually.
>>
>> \*       \*       \*
>>
>> (iii) A skill slot machine, hybrid slot machine and the devices or associated equipment necessary to conduct

---

[10] Curiously, the Majority asserts that it is not reading the statutes in pari materia but merely providing a plain language interpretation of a statute. Majority Op. at 41. "Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things." 1 Pa.C.S. § 1932(a). "Statutes in pari materia shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932(b). The Majority, by its own admission, is interpreting Section 5513 and the Gaming Act "as one statute." *Id.*

the operation of a skill slot machine or hybrid slot machine.

4 Pa.C.S. § 1103. A "skill slot machine" is "[a] slot machine in which the skill of the player, rather than the element of chance, is the predominant factor in affecting the outcome of the game." *Id.* Finally, a "hybrid slot machine" is "[a] slot machine in which a combination of the skill of the player and elements of chance affect the outcome of the game." *Id.* Since the POM devices fit within the definition of "slot machine" in the Gaming Act, according to the Majority, they are illegal under the provisions in Subsection 5513(a). However, as explained supra, "slot machines" are only unlawful under Subsection 5513(a)(1) if they are "to be used for gambling purposes." *See* supra pp. 7-11.[11]

In focusing on the definition of "slot machine" under Subsection 5513(a)(1), the Majority's analysis ignores the factual and legal issues involved in the Forfeiture Appeal. The BLCE seized the POM devices from Champions pursuant to Subsection 5513(b) which authorizes the seizure of "gambling devices," not slot machines. As discussed supra, the Majority renders the term "used for gambling purposes" irrelevant to the definition of "slot machine" for Subsection 5513(a)(1) through its application of the last-antecedent rule and then dismisses the Appellees' argument that the POM device is not a gambling device because the outcome is determined by skill rather than chance.

---

[11] The Majority's own analysis appears to concede that the Gaming Act encompasses non-gambling slot machines when it acknowledges that its interpretation could sweep within the Gaming Act (and thus, Section 5513) devices such as Skee-ball machines. The Majority observes that "[s]hould law enforcement officers begin conducting raids of children's amusement establishments and seizing Skee-Ball machines and stuffed animals, … the General Assembly … remains free to amend the relevant statutes to provide further for such innocuous activity[.]" Majority Op. at 62. That statement is difficult to harmonize with the Majority's insistence that every device falling within the statutory definition of "slot machine" is necessarily a gambling device.

According to the Majority, that argument "is merely to invoke the predominant factor test," an inquiry the Majority believes was eliminated by the Gaming Act's definition of "slot machine." Majority Op. at 64. Rather, according to the Majority, this inquiry would only be relevant "if we needed to determine whether the device constitutes a gambling device in the abstract, such that it falls into Section 5513(a)(1)'s general clause[.]" *Id.* There is nothing abstract about this inquiry since the POM device must be a "gambling device" under Subsection 5513(b) to be seized and must be "used for gambling purposes" to be unlawful under Subsection 5513(a)(1). Further, the Majority's analysis of Subsection 5513(a)(1) warrants additional discussion.

While the meaning of Subsection 5513(a)(1) is not wholly dispositive in this case, I must address the Majority's interpretation of that provision because its reliance on the last-antecedent rule illustrates the limitations of that cannon of construction. *See, e.g., Commonwealth v. Yard*, 323 A.3d 762, 790-91 (Pa. 2024) (Donohue, J., dissenting) (explaining that the Majority's application of the last-antecedent rule in construing Article I, Section 14 of the Pennsylvania Constitution produced a result that was contrary to the clearly expressed intent of the voters). Here, the Majority states that reading Subsection 5513(a)(1) to mean "that the Commonwealth [must] prove that a seized device is a 'slot machine … to be used for gambling purposes'" is an "unintuitive reading of the text." Majority Op. at 57-58 (emphasis omitted). In the Majority's view, the absence of a comma between "device" and the qualifying phrase "to be used for gambling purposes" compels the application of the last-antecedent rule because "[i]t is only when the qualifying phrase … is attached to 'any device' that the latter obtains a meaning that makes sense **alongside the preceding list of gambling devices**." Majority Op. at 58 (emphasis

added).  Under the Majority's interpretation, then, a slot machine constitutes a gambling device regardless of whether it is used for gambling purposes.

This interpretation is untenable.  A slot machine is a gambling device precisely when it is used for gambling purposes.  To disregard whether a slot machine is "used for gambling purposes" would subject all punch boards, drawing cards and slot machines to the prohibition of Subsection 5513(a)(1), even those that are innocuous.[12]  The Majority fails to acknowledge that the three listed devices have innocuous non-gambling uses.  Rather than employ the last-antecedent rule, I would conclude that the "slot machine" referenced in Subsection 5513(a)(1) must be a gambling device—i.e., it must be a device "to be used for gambling purposes."  *See* 18 Pa.C.S. § 5513(a)(1); *see also* supra pp. 7-11 (discussing Subsection 5513(a)(1)).

The flaws in the Majority's interpretation become more apparent in its reliance on Subsection 5513(e.1)(4), which the Majority characterizes as the "key" to construing Subsection 5513(a)(1).  The Majority states that

> S[ubs]ection 5513(a)(1) sets forth criminal prohibitions relating to slot machines, and S[ubs]ection 5513(e.1)(4) unambiguously tells us to look to the Gaming Act to determine

---

[12]  The Majority treats slot machines as sui generis and ignores that the Gaming Act, which supplies the only statutory definition of "slot machine," was enacted in 2004—more than half a century after the term "slot machine" first appeared in the Crimes Code.  *See, e.g.*, Act of April 29, 1925, P.L. 357, No. 208, ("That it is unlawful for any person … to make, manufacture, or assemble any punch board, drawing card, slot machine, or any machine or device used or intended to be used for gambling.").  As discussed above, while the Gaming Act and Section 5513 may be read in pari materia, the General Assembly had to intend that "to be used for gambling" modifies "slot machine" because in 1925 (and in 1972) when the provision was written that term was not defined on its own as a gambling device.  The construction of the **text** of Section 5513 cannot take on a new form merely because there is now a statutorily prescribed definition to "slot machine."  To eliminate any possible confusion: a slot machine, however defined, is not a gambling device simply because it bears the label "slot machine."  It is a gambling device only if it is "used for gambling purposes." 18 Pa.C.S. § 5513(a)(1).

> whether activities concerning slot machines are "lawfully conducted." To conclude, then, that the definition of "slot machine" in S[ubs]ection 5513(a)(1) has nothing to do with the definition of "slot machine" in the Gaming Act requires an unduly cramped reading of the statutory scheme.

*Id.* at 41. According to the Majority, the inquiry begins with the Gaming Act to determine whether a device at issue for purposes of the Crimes Code is the same type of device covered by the Gaming Act. In so doing, the Majority has flipped the analysis on its head. When reviewing a claim under Subsection 5513(b), a court must begin its analysis with whether the device is a gambling device, and only then may the court look to other laws within this Commonwealth to determine whether it is lawful. Thus, if the device is a gambling device, the next question is whether it is lawful under the Gaming Act. If it is, the licensed devices cannot be seized. If the device is not a gambling device, it is never necessary to look at the Gaming Act because plainly Subsection 5513(b) would not apply. However, in starting with the Gaming Act, which includes non-gambling slot machines, the Majority skips the gambling analysis altogether and, as a result, subjects devices to forfeiture that are not "gambling devices." 18 Pa.C.S. § 5513(b). While a non-gambling slot machine may be illegal under the Gaming Act because it is not licensed, the non-gambling slot machine cannot be seized under the Crimes Code.

Additionally, even accepting as I do[13] the Majority's proposition that the Gaming Act and Section 5513 create a "unified statutory scheme," the central question remains unanswered: what constitutes a "gambling device" for purposes of Subsection 5513(b)? *See* 18 Pa.C.S. § 5513(b). There is no definition for "gambling" within the Gaming Act.

---

[13] *See* supra note 4 (agreeing with the Majority's conclusion that the Gaming Act and Section 5513 create a unified statutory scheme).

As mentioned above, for decades the courts have understood gambling to involve three elements: consideration, an outcome predominantly determined by chance rather than skill, and a reward.[14] *Two Poker Machines*, 465 A.2d at 977. Under the predominant factor test, courts must determine whether the element of chance is predominant over skill. *See id*. This inquiry is essential to the conclusion that a device is a gambling device per se under Subsection 5513(b). The consequence of the Majority's holding, however, is that by removing consideration of chance from the definition of "slot machine," the General Assembly also implicitly eliminated that consideration from the class of devices subject to forfeiture under Subsection 5513(b). *See* Majority Op. at 65 (concluding that "[w]e need not conduct [the] inquiry" of whether the device satisfies the predominant factor test). However, if a slot machine is not a gambling device per se, then Subsection 5513(b) does not apply to it absent proof that it is used for gambling purposes. Had the General Assembly intended to abrogate the test established in *Two Poker Machines* and its progeny governing what constitutes a gambling device subject to forfeiture under Subsection 5513(b), it would have done so expressly by amending the Crimes Code to eliminate the consideration of chance from the definition of "gambling device" established in this Court's precedent.[15] *See Thompson*, 223 A.3d at 1277 (discussing the doctrine of

---

[14] The fate of the predominant factor test under Section 5513 is unclear under the Majority's interpretation because it believes that the General Assembly eliminated that test when it adopted the current definition of skill and hybrid slot machines in the Gaming Act. *See* Majority Op. at 19-20 (explaining that the General Assembly eliminated the consideration of chance versus skill as a factor when defining "slot machine" in the Gaming Act).

[15] The Majority contends that "[t]he General Assembly **did** expressly 'eliminate the consideration of chance' from the definition of a 'slot machine'" when it added skill and hybrid slot machines to that definition thereby rendering "irrelevant any consideration of the distinction between skill and chance." Majority Op. at 59 n.214 (emphasis in original). (continued…)

expressio unius est exclusio alterius and recognizing that, "as a matter of statutory interpretation, 'although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say'") (internal citation omitted); 1 Pa.C.S. § 1922(4) (a court may presume "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be place upon such language"). Because the General Assembly did not do so, our decision in *Two Poker Machines* remains the controlling authority defining gambling devices within this Commonwealth.

## Application of the Predominant Factor Test

Because *Two Poker Machines* is controlling in this case, the dispositive inquiry is whether the outcome of playing on the POM device is predominantly driven by chance or skill.[16] The operation of the POM device is undisputed by the parties. *In re Three Pa. Skill Amusement Devices*, Trial Court Opinion, 3/23/2023, at 5. The game begins after a player has inserted cash into the machine; the cash is then converted to points. *Id.* The game displays nine symbols arranged in a three-by-three grid resembling a "tic-tac-toe" board. Once the player presses "Play," the symbols begin to spin. *Id.* On the side of the

---

On that narrow point, there is little disagreement. As explained above, the General Assembly plainly broadened the statutory definition of "slot machine." *See* supra p. 17-18. The difficulty is that the Majority quietly substitutes "gambling device" for "slot machine" and proceeds as though the two terms are interchangeable. They are not. The General Assembly amended the definition of "slot machine;" it did not define "gambling," nor did it declare that every device labeled a slot machine is a gambling device per se. This Court has never interpreted Subsection 5513(b) to mean all punchboards, drawing cards, and slot machines are gambling devices per se. Rather, we have held that a gambling device per se is one that contains the three elements necessary to gambling. *Two Poker Machines*, 465 A.2d at 977-78.

[16] The elements of consideration and reward are undisputed by the parties.

screen are pay lines which represent winning symbol combinations and the corresponding point values for each combination. After the symbols stop spinning, the object is to match three symbols in as many pay lines as possible by placing a "wild" symbol when prompted. *Id.* Depending upon the resulting combination, the player can either win, resulting in a reward of at least 105% of the initial wager; hit, resulting in a reward of less than 105%; or lose. In the event of a hit or a loss, the player is presented with an option to play a second phase of the game, "Follow Me," a memory-style game through which the player may recover up to 105% of their wager upon successful completion. *Id.* Notably, however, a player who wins the initial game is never offered the "Follow Me" feature. *Id.; In re Three Pa. Skill Amusement Devices*, 306 A.3d 432, 436 (Pa. Commw. 2023).

Chance, not skill, determines a player's outcome when using the POM device. The initial phase of the POM device is undisputedly akin to a traditional gambling slot machine: randomly produced combinations of images on spinning reels which determine whether the player wins, loses, receives a partial payout, or becomes eligible to proceed to additional rounds or games. Although "Follow Me" may permit a player to exercise their memory and attentiveness, it is only available to the player upon the operation of chance. A player who immediately hits the jackpot or merely wins more than 105% of their wager and cashes out is never given the opportunity to utilize his or her alleged skill. Thus, whether a player may engage in the purportedly skill-based component of the game is itself wholly dependent upon the chance-driven operation of the initial spin.

The Commonwealth Court nevertheless concluded that the POM device was not a gambling device because it focused almost exclusively on the finding that "a patient and

skillful player could win at least 105% of the amount played on each and every play by utilizing the Follow Me feature." *In re Three Pa. Skill Amusement Devices*, 306 A.3d at 445. This reasoning misconstrues the governing inquiry. The relevant question is not whether skill can improve a player's outcome after the operation of chance has already occurred, but whether skill predominates in determining the overall result of the game. In *Two Poker Machines*, this Court explained that it is not enough for skill to merely influence or enhance the player's return; rather, skill must determine the outcome. *See Two Poker Machines*, 465 A.2d at 978. There, we acknowledged that the exercise of a player's skill could "improve a player's chance of winning" or "maximize the size of the winnings," yet we concluded that the Electro-Sport was a gambling device because chance controlled the cards dealt and therefore dictated the essential nature of the game. *Id.* The same principle governs here.

Further, the lower court's myopic analysis ignores a critical aspect of the POM device's gameplay—a player is not offered "Follow Me" on "each and every play." *See* Trial Court Opinion, 3/23/2023, at 5 (explaining that "Follow Me" is offered only after a hit or a loss). Access to "Follow Me" depends entirely upon the result of the initial chance-based game. Indeed, not only does the initial game determine whether the player may play "Follow Me" at all, it is also the **only** way a player will ever be eligible for **more** than 105% of their wager. No amount of skill will make the player eligible for the top prize. An important aspect of gambling is not merely whether chance or skill is predominant in determining whether the player wins or loses, but also the relative amount of the player's winnings or losses. As this Court observed in *Commonwealth v. Irwin*, "[i]t is this hope of gaining something beyond the amount played which motivates people to gamble and

creates the dangers associated with gambling." *Commonwealth v. Irwin*, 636 A.2d 1106, 1108 (Pa. 1993). Here, it is the chance-based initial phase of the POM device that creates that inducement. Skill may permit a player to recover their investment after their luck has already been tested by the reels, but it does not determine whether the player may access that opportunity in the first instance, nor does it determine the player's eligibility for the most significant winnings offered by the POM device.[17] Thus, because chance predominates both the player's eligibility for winnings and the magnitude of those winnings, the POM device is a gambling device per se and was subject to seizure and forfeiture under Subsection 5513(b).

## Conclusion

For the foregoing reasons, I join in the holdings of the Majority as described at the outset of this opinion in the Declaratory Judgment Appeal, and I concur in the result of the Majority in the Declaratory Judgment Appeal reversing the judgment of the Commonwealth Court. As to the propriety of the seizure and forfeiture of the POM devices at issue in the Forfeiture Appeal, I concur in the result reached by the Majority insofar as it concludes that the devices were subject to seizure and forfeiture. In my view, this case must be decided based on the application of our precedent to determine whether the POM devices are gambling devices. Our precedent has established that whether a device is a gambling device turns on the presence of three elements necessary for

---

[17] The fact that the payout upon successful completion of "Follow Me" is 105%, resulting in 5% more than the wager, does not change this analysis. The maximum wager that may be placed is four dollars. Trial Court Opinion, 3/23/2023, at 5. If a player successfully completes "Follow Me," the maximum they will have won is twenty cents. The player would be unable to receive these twenty cents until they have won "Follow Me" four additional times, as the POM device only permits a player to cash out in whole dollar amounts and rounds down to the nearest dollar. *Id.* at 6.

gambling: consideration, a result determined by chance rather than skill, and a reward. *Two Poker Machines*, 465 A.2d at 977. The element of gambling in dispute in the Forfeiture Appeal is whether the result of the POM device is determined predominantly by chance or skill. Applying our precedent to the Forfeiture Appeal, I would find that the element of chance is predominant in the POM device. Thus, because the POM devices are gambling devices, the seizure and forfeiture were proper under Subsection 5513(b) of the Crimes Code.